**[J-76-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 714 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated August 13, |
| | : | 2015 and entered on the docket on |
| | : | August 14, 2015, in the Court of |
| v. | : | Common Pleas, Allegheny County, |
| | : | Criminal Division at Nos. CP-02-CR- |
| | : | 0011609-1997, CP-02-CR-0012047- |
| WAYNE CORDELL MITCHELL, | : | 1997 and CP-02-CR-0013318-1997. |
| | : | |
| Appellant | : | SUBMITTED:  April 26, 2016 |

**OPINION**

**JUSTICE WECHT**                              **DECIDED:  July 19, 2016**

In this capital case, Wayne Cordell Mitchell appeals the order of the Court of

Common Pleas of Allegheny County dismissing his second petition for relief under the

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.[1]

Mitchell was convicted of first-degree murder and sentenced to death for the

September 10, 1997 murder of his estranged wife, Robin Little.  Mitchell and Little

began dating in high school and had a turbulent relationship marked by frequent

arguments.  In September of 1996, Mitchell threatened to kill Little if she ever left him.

---

[1]     Our opinion affirming Mitchell's judgment of sentence on direct appeal discussed
the facts underlying his convictions and death sentence.  See Commonwealth v.
Mitchell, 902 A.2d 430, 436-44 (Pa. 2006), cert. denied, 549 U.S. 1169 (2007) ("Mitchell
I").  For the purpose of resolving the instant appeal, the facts highlighted in this Court's
opinion affirming the dismissal of Mitchell's first PCRA petition also are relevant.  See
Commonwealth v. Mitchell, 105 A.3d 1257, 1262-65, 1273-77 (Pa. 2014) ("Mitchell II").

A son, Malik, was born to the couple in January of 1997. Mitchell and Little married in April of 1997, when Little was eighteen and Mitchell was nineteen. Mitchell lived with Little and her mother for several months in the spring of 1997. Little ended the relationship as arguments continued, and she asked Mitchell to move out in July of 1997. Little and Malik moved into her brother's home in Lancaster, Pennsylvania for approximately a month, but they returned to Little's mother's home in Pittsburgh in August of 1997.

On September 1, 1997, Little asked Mitchell if she could borrow his bus pass. He replied that she could do so if she picked it up from him at his place of employment. Upon Little's arrival, the two began arguing about a man named Brian that Little had been seeing. When Little told Mitchell that she and Brian had engaged in sexual relations, Mitchell became angry, dragged Little into a supervisor's office, and raped her. Little reported the rape to Pittsburgh police officers and went to Magee Women's Hospital, where hospital personnel prepared a rape kit.

While Little was in the hospital, the police located and arrested Mitchell. Mitchell waived his Miranda[2] rights and confessed to the rape. Mitchell was charged with rape, terroristic threats, unlawful restraint, and simple assault. He remained in jail pending a preliminary hearing, which was scheduled for September 9, 1997. While Mitchell was in jail awaiting the preliminary hearing, Little filed a petition for Protection from Abuse ("PFA").[3] The court granted Little's petition and entered a ten-day temporary order directing that Mitchell have no contact with Little pending a final PFA hearing, which was scheduled for September 10, 1997.

---

[2]  See Miranda v. Arizona, 384 U.S. 436 (1966).

[3]  See 23 Pa.C.S. §§ 6101-22.

On September 9, 1997, Mitchell waived his preliminary hearing in exchange for a nominal bond, with a condition that he seek immediate in-patient treatment for alcohol abuse. For reasons that were contested at trial, Mitchell was never admitted to the designated treatment facility. Instead, he went home and began telephoning Little. After several calls, Mitchell convinced Little to allow him to come to her home. Mitchell arrived at Little's residence at approximately 4:15 p.m., and the two argued about Brian, the man whom Little was seeing. Mitchell left shortly after 6:00 p.m., and spent a portion of the evening drinking alcohol with friends. Upon returning home at 1:00 a.m., Mitchell called Little, apologized, and convinced her to allow him to come to her residence to talk about their son.

Sheila Britton was the former director of a college-counseling program at the high school that Mitchell and Little attended. She had remained in contact with Mitchell after he left the school. Ms. Britton reported that Mitchell called her at approximately 1:00 a.m. on September 10, 1997, and stated that he was going to Little's house to kill her. Mitchell told Ms. Britton that Little had "disrespected" him and that he planned to dress in black clothing, go to Little's home, and "do what he had to do." Notes of Testimony, 10/5/1999 ("N.T. Trial"), at 326-27.

Mitchell arrived at Little's residence at 1:30 a.m. He found Little sitting with a man on her porch. The man quickly left when Mitchell and Little began arguing. Mitchell punched Little in the face and stomach, then dragged her toward an empty lot near her home, repeatedly striking her when she resisted. Little screamed for help, yelling, "He's going to kill me." Id. at 383. Mitchell placed his hand over her mouth and continued to drag her. As they passed a house, Mitchell saw a knife lying on a porch. He punched Little several more times, disabling her, while he retrieved the knife. When Little attempted to stand, Mitchell pushed her down and stabbed her in the stomach.

Mitchell then removed Little's clothes, wrapped his hands around her neck, and raped her, first vaginally and then anally. After the rape, Mitchell stabbed Little multiple times in the neck.

Ms. Britton stated that Mitchell called her again at 4:00 a.m. and told her that "Robin Little is no more." Id. at 330. He also told her that he was going to his uncle's house to establish an alibi, and that he planned to attend the PFA hearing later that morning, knowing that Little would not appear. Mitchell attended the PFA hearing, and, when Little did not appear, the court dismissed Little's petition and vacated the temporary PFA order. When Mitchell returned home, his mother informed him of Little's death. Mitchell denied any involvement, but his mother was concerned and insisted that he be evaluated at a hospital. Mitchell agreed, and went to St. Francis Hospital at approximately noon on September 10, 1997. Homicide detectives quickly identified Mitchell as a suspect and approached him in the hospital's waiting area when he was released. Mitchell agreed to accompany the detectives to their office, where he provided a statement in which he confessed to raping Little on September 1, 1997, and to raping and murdering her on September 10, 1997. In addition to the charges relating to the September 1, 1997 rape, Mitchell then was charged with criminal homicide, rape, involuntary deviate sexual intercourse ("IDSI"), and unlawful restraint. The Commonwealth timely filed and served a notice of its intention to seek imposition of the death penalty.

On October 1, 1999, Mitchell pleaded guilty to the rape, IDSI, and unlawful restraint charges arising from the September 10, 1997 sexual assault and homicide. The trial court deferred sentencing upon those convictions until after the trial on the remaining charges, which commenced before a jury on October 4, 1999. During the guilt phase of the trial, the Commonwealth introduced Ms. Britton's testimony about the

two telephone calls from Mitchell, which occurred shortly before and shortly after the murder. Mitchell pursued a diminished capacity defense based upon a psychological condition and long-term alcohol abuse. The jury rejected Mitchell's defense and found him guilty of first-degree murder for the September 10, 1997 killing of Little, as well as the remaining charges arising from the September 1, 1997 sexual assault. Because the Commonwealth sought imposition of the death penalty, the jury remained empaneled for a separate penalty phase hearing. The jury found two aggravating circumstances and no mitigating circumstances, and accordingly sentenced Mitchell to death.

On direct appeal, this Court affirmed Mitchell's judgment of sentence. See Mitchell I, *supra* n.1. Mitchell filed a petition for writ of *certiorari*, which the Supreme Court of the United States denied on January 16, 2007. Thus, Mitchell's judgment of sentence became final on that date. See 42 Pa.C.S. § 9545(b)(3). On February 21, 2007, Mitchell timely filed a *pro se* PCRA petition. Lawyers with the Federal Community Defender Office for the Eastern District of Pennsylvania subsequently entered an appearance on Mitchell's behalf. Following several extensions of time, Mitchell filed an amended PCRA petition on April 28, 2009. Among the thirteen claims that Mitchell raised in his amended petition was an allegation of trial counsel ineffectiveness for failure to investigate and develop evidence that would have undermined Ms. Britton's credibility as a witness. As noted, *supra*, at Mitchell's trial in 1999, Ms. Britton testified regarding two telephone calls that she received from Mitchell on the night of the murder. The first occurred at 1:00 a.m., when Mitchell told her that he planned to kill Little because she had "disrespected" him. N.T. Trial at 326. The second call occurred at 4:00 a.m., when Mitchell told Ms. Britton that "Robin Little is no more." Id. at 330.

In March 2008, then-assistant federal defender Carol Wright interviewed Ms. Britton while preparing Mitchell's federal *habeas corpus* petition. At the PCRA hearing,

Mitchell presented an affidavit from Attorney Wright, which indicated that she met with Ms. Britton on August 1, 2007, and subsequently spoke with Ms. Britton on the telephone on March 20, 2008. Attorney Wright stated that Ms. Britton did not reveal the information relevant to this appeal during the August 1, 2007 meeting, but that, during the March 20, 2008 telephone conversation, Ms. Britton offered the following information for the first time in the course of these proceedings:

> [T]he morning Robin died, Robin's mother called and [Ms. Britton] went over to her house. The police were there and they questioned her, but she went totally blank and could not remember anything about her conversations with [Mitchell] the previous night. She did not tell the police officers anything about her conversations at that time. That evening when she went to bed all she started to remember [was] her interactions with [Mitchell] the previous night. She told me the following morning she called a mental health facility and made an appointment with a psychiatric social worker. She discussed what she remembered with the social worker.
>
> [Ms. Britton] told me that a different set of police officers questioned her at a later time and she told them all that she remembered about the phone calls with [Mitchell].
>
> Ms. Britton told us that she would have talked with [trial counsel] before trial and was surprised that they did not contact her.

Mitchell II, 105 A.3d at 1274-75 (quoting Mitchell's PCRA Evidentiary Hearing Exhibit 16).

After learning of Ms. Britton's statements to Attorney Wright, Mitchell included in his first PCRA petition an allegation that his trial counsel was ineffective for failing to interview Ms. Britton prior to his trial. Mitchell argued that, had trial counsel done so, he would have discovered that Ms. Britton "remembered" the content of the telephone calls only after going to bed on the day following the murder, and, further, that Ms. Britton briefly spoke to police officers on the morning after the murder but did not mention the incriminating telephone calls at that time. Because this information could have cast

doubt upon Ms. Britton's trial testimony, Mitchell alleged that he was prejudiced by his trial counsel's failure to discover the potential impeachment evidence.

Ms. Britton's trial testimony about the phone calls was consistent with a statement that she provided to police on July 23, 1998, approximately ten months after the murder. Although Ms. Britton did not disclose in either her July 23, 1998 statement or during Mitchell's trial that she had spoken to police officers on the morning after the murder or that she only remembered the telephone calls after going to bed on the following day, she testified at the PCRA hearing that she informed the trial prosecutor of these facts before Mitchell's trial when she met with the prosecutor to review her statement. Ms. Britton also testified that, had Mitchell's trial counsel interviewed her prior to trial, she would have disclosed the manner in which she remembered the telephone conversations. Notes of Testimony, 10/15/2012, at 82. Ms. Britton affirmed that her trial testimony was accurate and that, at the time of trial, she remembered the telephone calls "vividly." Id. at 86. The Commonwealth called the trial prosecutor to rebut portions of Ms. Britton's testimony, and he stated that, before trial, he was unaware that Ms. Britton had spoken to police officers immediately after the murder, and that Ms. Britton never informed him of the manner in which she remembered the telephone calls.

The PCRA court rejected Mitchell's ineffectiveness claim, reasoning that the claim presumed that Ms. Britton would have informed Mitchell's counsel of the salient facts had he interviewed her prior to trial, but that no credible evidence established that she would have done so. To the extent that Ms. Britton's testimony at the PCRA hearing conflicted with the trial prosecutor's testimony, the court credited the prosecutor over Ms. Britton. The PCRA court specifically declined to credit Ms. Britton's testimony that she would have disclosed the manner of her recollection if trial counsel had

interviewed her, noting that Ms. Britton did not reveal the relevant information for more than eight years after Mitchell's trial, despite having numerous prior opportunities to do so in statements to the police, in meetings with the prosecutor, at Mitchell's trial, or in her first interview with Attorney Wright on August 1, 2007. Because Mitchell failed to establish that an interview with Ms. Britton prior to trial would have yielded the information that Attorney Wright discovered in 2008, the PCRA court concluded that Mitchell failed to prove that he was prejudiced by trial counsel's failure to conduct such an interview. Thus, trial counsel was not ineffective. On appeal, this Court affirmed the PCRA court's conclusion, taking note of the PCRA court's exclusive prerogative to make credibility determinations. See Mitchell II, 105 A.3d at 1276-77.

On February 13, 2015, Mitchell filed an untimely second PCRA petition, arguing that the facts surrounding Ms. Britton's recollection of the telephone calls constituted after-discovered evidence that entitled him to a new trial. See 42 Pa.C.S. § 9543(a)(2)(vi). Recognizing that his petition was facially untimely, Mitchell invoked the exception to the PCRA's time bar for the discovery of a new fact. See 42 Pa.C.S. § 9545(b)(1)(ii).[4] Specifically, Mitchell relied upon the PCRA court's reasoning in

---

[4] The "newly-discovered fact" exception provides that a PCRA claim need not be filed within the one-year time restriction where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). This exception is distinct from a claim for relief premised upon the existence of "after-discovered evidence," which the PCRA provides for in 42 Pa.C.S. § 9543(a)(2)(vi). In Commonwealth v. Bennett, 930 A.2d 1264, 1270-73 (Pa. 2007), this Court clarified the distinctions between the applicable inquiries under both sections of the PCRA and sought to eliminate the confusion that had resulted from prior instances of terminological imprecision. The "newly-discovered fact" exception applies only to the PCRA's time bar, and it "requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence.'" Id. at 1270. An "after-discovered evidence" claim, by contrast, provides a basis for substantive relief and requires that the proffered evidence be "exculpatory" and that it "would have changed the outcome of the trial." Id.

denying his ineffectiveness claim in his first petition, arguing that the judicial conclusion that Ms. Britton would not have disclosed the relevant information about the manner of her recollection prior to trial constituted a "fact" that previously was unknown and could not have been discovered by the exercise of due diligence, thereby satisfying the newly-discovered fact exception to the PCRA's time bar. Furthermore, Mitchell argued that he properly raised this claim within sixty days following the issuance of this Court's opinion affirming the dismissal of his first PCRA petition, as he had no opportunity to raise the claim prior to this Court's affirmance.

The PCRA court rejected Mitchell's newly-discovered fact argument, reasoning that the court's prior conclusion was not a new fact, but, rather, that "the 'facts' upon which the claim is predicated are the facts surrounding the manner, the day after the murder, in which [Ms.] Britton 'remembered' the phone calls from [Mitchell]." PCRA Ct. Op., 12/10/2015, at 6. Mitchell learned these facts in 2008, as evidenced by Attorney Wright's affidavit. The PCRA court noted that Mitchell chose to rely upon the relevant facts as the basis for an ineffective assistance of counsel claim in his first PCRA petition, but then sought to recast the facts in his second petition as establishing a claim premised upon the existence of after-discovered evidence. However, because the claim was not predicated upon previously-unknown facts that could not have been ascertained by the exercise of due diligence, the PCRA court concluded that Mitchell's petition failed to establish an exception to the time bar, leaving the court without jurisdiction to entertain the petition. Accordingly, the PCRA court dismissed Mitchell's second petition without a hearing.

Mitchell appeals the PCRA court's order dismissing his petition, presenting three questions for our review:

> I.     Did the PCRA court err when it dismissed the [p]etition as untimely where it was timely filed under 42 Pa.C.S. § 9545(b)(1)(ii)?

II. Did the PCRA court err when it determined that the [p]etition was without merit where the after-discovered evidence entitled Mr. Mitchell to a new trial based on (A) Pennsylvania's after-discovered evidence standard, and (B) Mr. Mitchell's Fifth, Eighth and Fourteenth Amendment rights to due process and a verdict based on reliable evidence?

III. Did the PCRA court err in finding the petition untimely and denying relief without holding a hearing as to both timeliness and the merits of the petition?

Brief of Appellant at 1.

Our standard of review over the denial of a PCRA petition is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" Commonwealth v. Taylor, 67 A.3d 1245, 1248 (Pa. 2013) (quoting Commonwealth v. Rainey, 928 A.2d 215, 223 (Pa. 2007)). A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment of sentence becomes final. See 42 Pa.C.S. § 9545(b)(1). For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

There are three exceptions to the timeliness requirement, including an exception concerning the discovery of a previously-unknown fact. See 42 Pa.C.S. § 9545(b)(1)(ii). Under this exception, a petitioner must file a PCRA petition within sixty days of the date that the claim could have been presented. See 42 Pa.C.S. § 9545(b)(2). "PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy." Commonwealth v. Ali, 86 A.3d 173, 177 (Pa. 2014). "Accordingly, the 'period for filing a PCRA petition is not subject to the doctrine of equitable tolling;' instead, the time for filing a PCRA petition can be extended only if the PCRA permits it

to be extended, *i.e.,* by operation of one of the statutorily enumerated exceptions to the PCRA time-bar." Id. (quoting Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999)). "The court cannot ignore a petition's untimeliness and reach the merits of the petition." Taylor, 67 A.3d at 1248. "[A] petition for post-conviction relief in a capital case may be dismissed without an evidentiary hearing if there are no genuine issues of material fact and the petitioner is not entitled to relief." Commonwealth v. D'Amato, 856 A.2d 806, 820 (Pa. 2004); see also Pa.R.Crim.P. 909(B)(2).

We need only address Mitchell's first issue, because our resolution of that issue is dispositive of this appeal. Mitchell's judgment of sentence became final on January 16, 2007. Because Mitchell filed his second PCRA petition on February 13, 2015, the petition was facially untimely. Therefore, Mitchell could establish the PCRA court's jurisdiction only by pleading and proving an exception to the PCRA's timeliness requirement. Mitchell pursued the "newly-discovered fact" exception to the time bar, which provides that a PCRA claim need not be filed within the one-year time restriction where "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). As he argued before the PCRA court, Mitchell maintains that the PCRA court's prior conclusion that Ms. Britton would not have disclosed the manner of her recollection prior to trial constituted such a "fact."

Mitchell's argument is not unlike one that this Court rejected in Commonwealth v. Gamboa-Taylor, 753 A.2d 780 (Pa. 2000). In that case, the defendant in a capital case instructed his trial counsel not to defend against the charges and not to present mitigating evidence at the penalty stage, but later claimed that his counsel was ineffective for failing to override the defendant's decisions. The PCRA court concluded that counsel was not ineffective. The defendant subsequently filed a second PCRA

petition, in which he alleged that his first PCRA counsel was ineffective. After the PCRA court dismissed the second petition as untimely, this Court affirmed, noting that the defendant's "attempt to interweave concepts" of ineffective assistance and newly-discovered facts was insufficient to establish jurisdiction. Id. at 785. This Court explained that "a conclusion that previous counsel was ineffective is not a newly discovered 'fact' entitling Appellant to the benefit of the exception for [newly-discovered facts]. In sum, a conclusion that previous counsel was ineffective is not the type of [newly-discovered fact] encompassed by the exception." Id.

Similarly, in the instant case, the PCRA court correctly concluded that Mitchell failed to prove the existence of a newly-discovered "fact" that he could not have ascertained previously through the exercise of due diligence. The PCRA court's earlier determination that Ms. Britton would not have disclosed the relevant information to Mitchell's counsel prior to trial was part of the court's reasoning for rejecting Mitchell's ineffective assistance of counsel claim. The court's legal conclusion, itself, did not establish any new and previously-unknown fact regarding the circumstances surrounding Ms. Britton's recollection of the telephone calls. Accordingly, Mitchell has failed to satisfy the newly-discovered fact exception to the PCRA's time bar. Therefore, Mitchell's petition was untimely, leaving the PCRA court without jurisdiction to entertain his claims. See Ali, *supra*.

Because Mitchell failed to satisfy any exception to the PCRA's time bar, the PCRA court did not err in concluding that Mitchell's petition was untimely, and that it lacked jurisdiction to hear Mitchell's claims. Accordingly, the PCRA court did not err in dismissing Mitchell's petition without a hearing.

Order affirmed.

Justices Baer, Todd, Donohue and Dougherty join the opinion.

Chief Justice Saylor files a concurring opinion.