J-S71038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DENNIS B. JOHNSON, | |
| Appellant | No. 1069 EDA 2017 |

Appeal from the PCRA Order January 18, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007319-2009

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:           **FILED JANUARY 02, 2018**

Appellant, Dennis B. Johnson, appeals *pro se* from the order dismissing his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, as untimely. We affirm.

A prior panel of this Court set forth the background of this case as follows:

> On August 27, 2007, Appellant, Curtis Smith (Curtis), and Amin Vicks were at a convenience store located at 30th Street and Lehigh Avenue in Philadelphia, where Ozzie Clark (Clark) was working as the sole clerk. At the time Curtis arrived, the doors to the store were locked, and business was being conducted through a window on the side of the store.
>
> Curtis identified Appellant in court, and testified that he knew Appellant all of his life. While Curtis was at the window completing his purchase of cigars, he heard a commotion. Curtis

---

[*] Retired Senior Judge assigned to the Superior Court.

turned to see Appellant "with a gun out[,]" and pointed at the chest of the victim, Kenyatta Smith (Kenyatta or "the victim"). (N.T. Trial, 9/28/10, at 126, 136). Curtis also heard Appellant say to the victim, "Put everything on the steps or something like that." (*Id.* at 128). He then observed Kenyatta place his personal effects, including a phone, on the steps. He also heard Appellant instruct the victim not to touch the items. When he observed what was going on, Curtis asked Appellant, "Yo, what [are] you doing, Dog?" (*Id.* at 126). Soon thereafter, Curtis heard gunshots. He immediately ran away, explaining that "When somebody is shooting a gun, I'm moving out of the way so I don't get hit." (*Id.* at 160).

Clark also testified for the Commonwealth. He had worked at his parents' business, the convenience store located at 30th Street and Lehigh Avenue, since he was a child. Clark identified Appellant in court, indicating that he had known him for 5 or 6 six years at the time of the shooting. Appellant would frequent the convenience store about once or twice a week as a customer. Clark knew Kenyatta as a frequent customer at the store as well, and further recalled that Kenyatta was a nighttime security guard at a local pool. Clark also indicated that he knew Amin Vicks and Curtis, as they were also regular customers.

Clark was working alone the evening of the shooting. He saw Curtis, Amin Vicks, and Appellant approach the store. Kenyatta arrived at nearly the same time on a bicycle. Kenyatta purchased a few items first. While he was taking an order for Amin Vicks or Curtis, Clark noticed Appellant holding Kenyatta at gunpoint with a chrome revolver, and rifling through the victim's pockets. Clark heard Appellant say something like, "you want to get popped, Oldhead?" (N.T. Trial, 9/29/10, at 54). Clark believed that Appellant said this when Kenyatta resisted giving up his phone. Immediately thereafter, Clark heard a gunshot ring out, and saw everyone run away, including Kenyatta, who only ran for a short time before collapsing. Clark indicated that he was only about eleven feet from where the shooting took place, and that he heard only one shot. Immediately after the shooting, Clark called the police and then tried to attend to Kenyatta, who was "[b]arely breathing." (*Id.* at 66).

Police Officer Lewis Grandizio, a firearms expert, testified that he analyzed the bullet taken from Kenyatta's body. It was consistent with being fired from a .32 caliber revolver. Dr. Gary

Collins, an assistant medical examiner for the Philadelphia Medical Examiner's Office, reviewed the report of the autopsy that had been performed by Dr. Gregory McDonald. Dr. Collins concluded that Kenyatta died of a single gunshot wound to the right side of his chest under the armpit, and that the manner of death was homicide. The single bullet had penetrated the victim's liver, heart, and left lung.

On September 30, 20[10], Appellant was convicted by a jury of [second degree murder, robbery, and a violation of the Uniform Firearms Act]. On November 2, 2010, the trial court sentenced Appellant to life imprisonment for second degree murder, and concurrent terms of 5–10 years' and 3 1/2–7 years' imprisonment for robbery and the firearms violation, respectively. Appellant filed a direct appeal, but that appeal was ultimately discontinued on September 9, 20[11], before a brief was filed with this Court.

Appellant filed a counseled PCRA petition, his first, on July 20, 2012. The Commonwealth filed a motion to dismiss on February [7], 2013. Appellant filed a response to the Commonwealth's motion to dismiss on March 5, 2013. Subsequently, on July 9, 2013, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant's petition was su[b]sequently dismissed by the court by order dated September 9, 2013.

Appellant filed a timely notice of appeal to this Court from that order[.] . . .

(**Commonwealth v. Johnson**, 2015 WL 6169417, at *1–2 (Pa. Super. filed Feb. 23, 2015)) (unpublished memorandum) (footnotes and some record citations omitted; record citation formatting provided).

A panel of this Court affirmed the PCRA court's order on February 23, 2015. (**See id.** at *1). Our Supreme Court denied Appellant's petition for allowance of appeal on August 19, 2015. (**See Commonwealth v. Johnson**, 121 A.3d 495 (Pa. 2015)).

On September 10, 2015, Appellant filed the instant *pro se* PCRA petition, requesting relief primarily on the basis of a letter dated May 22, 2011, from Maurice Stokes to Appellant's then PCRA counsel. (**See** PCRA Petition, 9/10/15, at unnumbered page 3, Exhibit B). In the letter, Stokes recants statements that he made to homicide detectives in 2008 implicating Appellant as the shooter, and declares that Appellant is innocent of the Kenyatta Smith murder.[1] The Commonwealth filed a letter brief on October 24, 2016. The PCRA court issued notice of its intent to dismiss the petition without further proceedings on December 15, 2016, and Appellant filed a response on December 29, 2016. **See** Pa.R.Crim.P. 907(1). On January 18, 2017, the

---

[1] Neither party called Stokes as a witness at trial. (**See** PCRA Court Opinion, 5/09/17, at 5; Commonwealth's Brief, at 4, 11). In relevant part, the May 22, 2011 letter avers:

> To be clear I am speaking on the homicide in which [Appellant] was charged and convicted. [Appellant] was set up to take a fall simply because he was guilty of associating with me and a few others who grew a bad reputation in the neighborhood.
>
> I was previously in a profer [sic] where I'd receive a 5-10 year sentence for a capital murder if I agreed to their terms which was to help them to get certain individuals behind bars. The statements supposedly made by me were total lies they coached in order to help them to pin their case on the person they wanted.
>
> \*     \*     \*
>
> [Appellant] is innocent and I want to help prove this because I spoke directly to the individuals who orchestrated this and didn't do the right thing, so I feel obligated to tell the truth.

(PCRA Petition, 9/10/15, at Exhibit B).

J-S71038-17

court entered its order dismissing the petition as untimely.  This timely appeal

followed.[2]

Appellant raises the following questions for our review:

1. [Did] the PCRA court erred [sic] in ruling that Appellant's PCRA petition did not meet the newly discovered facts exception to the time-bar and that [Appellant] did not establish due diligence[?]

2. [Is] Appellant [] entitled to relief where he was denied the effective assistance of PCRA counsel, as guaranteed under the United States and Pennsylvania Constitutions, when his PCRA counsel failed to raise the Maurice Stokes claim during the initial review stage of [Appellant's] PCRA proceedings[?]

3. In the interest of justice [should] Appellant's claims regarding Maurice Stokes [] be heard[?]

4. [Does] this Court [have] jurisdiction to adjudicate upon [Appellant's] claim as he meets the timeliness exception due to governmental interference[?]

(Appellant's Brief, at 15, 27, 33, 39) (some capitalization omitted).[3]

When reviewing the propriety of an order denying PCRA relief, this Court is limited to a determination of whether the

---

[2] Appellant filed a timely, court-ordered concise statement of errors complained of on appeal on March 13, 2017.  The PCRA court entered an opinion on May 9, 2017.  **See** Pa.R.A.P. 1925.

[3] We take these issues from the argument section of Appellant's defective brief.  Although Appellant purports to raise six issues in the statement of the questions involved, those issues do not correspond directly to the four he raises in the argument section.  (**See id.** at 5, 15, 27, 33, 39); **see also** Pa.R.A.P. 2116, 2119.  In addition, the argument section is rambling and lacks cogent legal analysis.  (**See** Appellant's Brief, at 15-41).  In the interest of judicial economy, we will address Appellant's claims to the extent we are able to discern them.  **See Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005) (stating *pro se* litigants must comply with procedural rules and declining to quash appeal despite defective brief).

- 5 -

evidence of record supports the PCRA court's conclusions and whether its ruling is free of legal error. This Court will not disturb the PCRA court's findings unless there is no support for them in the certified record.

. . . The question of whether a petition is timely raises a question of law, and where a petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Hudson**, 156 A.3d 1194, 1196–97 (Pa. Super. 2017), *appeal denied*, 2017 WL 3614192 (Pa. filed Aug. 23, 2017) (citation omitted).

All PCRA petitions must be filed within one year of the date upon which the judgment of sentence became final, unless one of the statutory exceptions set forth in 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii) applies. **See** 42 Pa.C.S.A. § 9545(b)(1). The petitioner bears the burden to plead and prove an applicable statutory exception. **See Commonwealth v. Robinson**, 139 A.3d 178, 186 (Pa. 2016).

"There is no absolute right to an evidentiary hearing." **Commonwealth v. Burton**, 121 A.3d 1063, 1067 (Pa. Super. 2015), *aff'd*, 158 A.3d 618 (Pa. 2017) (citation omitted). "On appeal, we examine the issues raised in light of the record to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." **Id.** (citation and internal quotation marks omitted). "If the [PCRA] petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the

petition." ***Commonwealth v. Jackson***, 30 A.3d 516, 519 (Pa. Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citation omitted).

Section 9545 of the PCRA provides only three limited exceptions that allow for review of an untimely PCRA petition:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition invoking one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Appellant's judgment of sentence became final on September 9, 2011, the date that he discontinued his direct appeal. ***See Commonwealth v. McKeever***, 947 A.2d 782, 785 (Pa. Super. 2008). Therefore, Appellant had until September 9, 2012 to file a timely PCRA petition. ***See*** 42 Pa.C.S.A. § 9545(b)(1). Thus, the instant petition filed on September 10, 2015, is patently untimely, and the burden fell upon Appellant to plead and prove that one of the enumerated exceptions to the one-year time-bar applied to his case.

Appellant first claims the benefit of the newly-discovered facts exception set forth at section 9545(b)(1)(ii), based on his receipt of the Stokes letter. (**See** Appellant's Brief, at 15-27). According to Appellant, he first learned of the May 2011 Stokes letter on September 3, 2015—more than four years after it was written—when his former PCRA counsel sent him his case file, which included the letter. (**See id.** at 15-16). Appellant further asserts that he filed the instant PCRA petition well-within sixty days of his receipt of the letter. (**See id.** at 16). This claim fails.

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

> \*    \*    \*

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

**Commonwealth v. Brown**, 111 A.3d 171, 176–77 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015) (case citations and quotation marks omitted; emphasis in original).

- 8 -

In **Commonwealth v. Brown**, 141 A.3d 491 (Pa. Super. 2016), this Court considered whether an affidavit describing an alleged confession of another individual to a shooting for which the appellant was convicted constituted a newly-discovered fact. The **Brown** Court concluded that it did not, explaining:

> evidence which purportedly reveals that someone other than [the petitioner] committed the murder is hearsay, not within any exception, and so unreliable as to be inadmissible. A claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly-discovered fact] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [the petitioner] to relief under the PCRA.

**Brown**, 141 A.3d at 501 (citation omitted).

Likewise, here, the Stokes letter is hearsay because it is an out-of-court statement offered for the truth of the matter asserted, *i.e.*, that Appellant is innocent. **See** Pa.R.E. 801(c). Therefore, it was inadmissible hearsay and does not fall under the newly-discovered fact timeliness exception. **See Brown**, 141 A.3d at 501.

Furthermore, Appellant failed to demonstrate that he acted with due diligence in obtaining Stokes' letter. The record reflects that Stokes gave statements to homicide detectives regarding the Kenyatta Smith shooting in May and October 2008. (**See** PCRA Petition, 9/10/15, at Exhibit A). According to those statements, Stokes and Appellant were from the same neighborhood and knew one another for many years, since 1999. (**See id.**). Stokes sent the letter asserting Appellant's innocence to Appellant's then privately-retained PCRA counsel in May of 2011, more than four years before Appellant

filed the instant PCRA petition. As the PCRA court points out, Appellant's assertion that he did not know about the letter at the time Stokes sent it to counsel "strains credulity[,]" where Stokes had to be directed as to whom to send this letter. (PCRA Ct. Op., at 6). We agree, and conclude that Appellant has failed to meet his burden of establishing the applicability of the newly-discovered facts exception to his untimely PCRA petition.

Appellant next argues that he is entitled to relief based on his claim of ineffective assistance of PCRA counsel, for counsel's alleged failure to take appropriate action after receiving the Stokes letter. (**See** Appellant's Brief, at 27-33). However, it is well-settled that "a claim that counsel was ineffective will not save an untimely PCRA petition." **Commonwealth v. Carr**, 768 A.2d 1164, 1167 (Pa. Super. 2001) (citations omitted); **see also Commonwealth v. Lesko**, 15 A.3d 345, 367 (Pa. 2011) ("[I]t is well established that the fact that a petitioner's claims are couched in terms of ineffectiveness will not save an otherwise untimely petition from the application of the time restrictions of the PCRA.") (citation omitted). Accordingly, Appellant's ineffective assistance of counsel claim does not serve as a basis for circumventing the PCRA's timeliness requirements.

Appellant next maintains that his claims regarding Maurice Stokes should be heard "in the interest of justice" and fairness. (Appellant's Brief, at 33; **see id.** at 34-39) (capitalization omitted). This claim also fails.

As noted,

> PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. Accordingly, the period for filing a PCRA petition is not subject to the doctrine of equitable tolling; instead, the time for filing a PCRA petition can be extended only if the PCRA permits it to be extended, *i.e.*, **by operation of one of the statutorily enumerated exceptions to the PCRA time-bar**. The court cannot ignore a petition's untimeliness and reach the merits of the petition. . . .

*Commonwealth v. Mitchell*, 141 A.3d 1277, 1284 (Pa. 2016) (citations and quotation marks omitted; emphasis added).

Here, Appellant's invocation of the interest of justice and fairness does not implicate one of the three limited statutorily enumerated exceptions to the PCRA's time bar, and cannot serve as the basis for jurisdiction over his untimely petition. *See id.* Accordingly, Appellant's argument fails.

Finally, Appellant claims the applicability of the governmental interference exception at section 9545(b)(1)(iii), based on assertions Stokes made regarding a plea agreement in the May 2011 letter. (*See* Appellant's Brief, at 39-41). Appellant argues that the Commonwealth committed a *Brady*[4] violation by neglecting to disclose to him that Stokes was given a plea deal in exchange for providing authorities with information leading to his arrest and conviction. (*See id.* at 39-40). This claim also fails.

> Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

prosecution, either willfully or inadvertently; and (3) prejudice ensued. The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (citations and quotation marks omitted).

"Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008) (citation omitted).

Here, the PCRA court rejected Appellant's claim premised on the Commonwealth's alleged withholding of information regarding a plea agreement with Stokes because Stokes did not testify at Appellant's trial, nor were his statements introduced as evidence. (*See* PCRA Ct. Op., at 8). "[T]herefore, any form of impeachment evidence would be utterly irrelevant as to this non-witness." (*Id.*). We agree. The purported information regarding non-witness Stokes could not "have been material evidence that deprived [Appellant] of a fair trial[,]" and thus could not have formed the basis

- 12 -

of a **Brady** violation. **Ovalles**, **supra** at 965 (citation and internal quotation mark omitted).

Further, as previously discussed, Appellant has not established that he acted with due diligence in obtaining the Stokes letter referencing the plea agreement. His argument fails for this reason as well. **See Abu-Jamal**, **supra** at 1268.

In sum, we conclude Appellant has not met his burden of proving that his untimely PCRA petition fits within one of the three exceptions to the PCRA's time-bar. **See Robinson**, **supra** at 186.[5] Accordingly, we affirm the order of the PCRA court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/2/2018

---

[5] To the extent Appellant argues that he was entitled to a hearing on his untimely PCRA petition, we disagree, and discern no error in this regard. (**See** Appellant's Brief, at 5, 17, 22, 27, 41); **see also Burton**, **supra** at 1067; **Jackson**, **supra** at 519.