J-A06042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH R. ARNOLD | : | |
| | : | |
| Appellant | : | No. 134 WDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009040-2001

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MAY 7, 2021**

Kenneth R. Arnold ("Appellant") appeals, *pro se*, from the order entered in the Allegheny County Court of Common Pleas, dismissing his "Motion to Open and Vacate Order/Sentence Pursuant to 42 Pa.C.S. § 5505" as an untimely petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Appellant seeks relief from the judgment of sentence of two consecutive terms of life imprisonment imposed following his conviction of two counts of first-degree murder.[2] On appeal, he contends the PCRA court erred in dismissing his petition as untimely filed when he demonstrated an exception to the timing requirements.  We affirm.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. 2502(a).

The facts underlying Appellant's conviction were summarized by this Court on direct appeal:

This case arises out of a shooting that occurred on May 20, 2001, outside of the A-Plus Mini Mart, located on Centre Avenue in Pittsburgh. Eric Wilson ("Wilson") drove [Appellant] to the A-Plus in a Chevrolet Cavalier. Wilson parked the vehicle and got out to go into the store. While Wilson was walking away from the vehicle, he heard a noise coming from the direction of the vehicle. When Wilson turned around, he observed smoke coming from the vehicle. Wilson and [Appellant] then looked under the hood of the vehicle to determine the source of the smoke.

While Wilson and [Appellant] were investigating the problem with Wilson's vehicle, a Chevrolet Malibu arrived. Alonzo Bowles ("Bowles"), Travis Jemison ("Jemison") and Darrell Henderson ("Henderson") were in the blue Malibu. Henderson left the Malibu vehicle and walked to the side of the A-Plus building to urinate. Shortly thereafter, Wilson also walked to the side of the building to urinate. While Wilson was on the side of the building, [Appellant] approached the Malibu and fired several shots into the Malibu vehicle, killing Bowles and Jemison. Thereafter, [Appellant] fled the scene. Wilson returned to his vehicle and observed Bowles and Jemison lying shot in the Malibu vehicle. Wilson attempted to give aid to Bowles and Jemison before leaving the scene.

Later that morning, [Appellant] appeared at the residence of Thomas Harris ("Harris") and requested a ride home. During the car ride, [Appellant] admitted to Harris that he had shot Bowles at the A-Plus because he believed that Bowles was reaching for a gun. Then, between the hours of 4:00 a.m. and 6:00 a.m., [Appellant] went to the residence of John Lee ("Lee"), where [Appellant] admitted to shooting Bowles and Jemison. [Appellant] explained to Lee that [Appellant] had previously attempted to rob Bowles and had shot Bowles in the process of the prior robbery. Consequently, [Appellant] believed that Bowles was going to shoot him in retaliation.

While investigating the scene, police recovered from the Malibu several nine millimeter cartridge casings, a cell phone and a spent bullet. After receiving information that Wilson's Chevrolet Cavalier may have been involved in the shooting, the police

secured a search warrant for Wilson's vehicle. Upon a search of the vehicle, the police discovered spent casings, bullets and gun powder. The police concluded that the spent shell casings and bullets recovered from the victims, the Malibu and the Cavalier were all fired from the same gun.

*Commonwealth v. Arnold*, 332 WDA 2005 (unpub. memo. at 1-3) (Pa. Super. Apr. 30, 2007), *appeal denied*, 241 WAL 2007 (Pa. Dec. 14, 2007).

Appellant was arrested and charged with two counts of criminal homicide. On September 21, 2004, a jury found Appellant guilty of two counts of first-degree murder. The trial court sentenced him that same day to two, consecutive terms of life imprisonment. This Court affirmed the judgment of sentence on direct appeal, and, on December 14, 2007, the Pennsylvania Supreme Court denied Appellant's petition for allocatur review. *See Arnold*, 332 WDA 2005, *appeal denied*, 241 WAL 2007. Appellant did not seek review before the United States Supreme Court.

On May 30, 2008, Appellant filed his first PCRA petition, *pro se*, asserting the ineffective assistance of trial counsel. *See* Appellant's Motion for Post Conviction Relief, 5/30/08, at 2-3. Counsel was appointed, but subsequently filed a petition to withdraw and **Turner**/**Finley**[3] "no merit" letter. On December 15, 2008, the PCRA court granted counsel's petition to withdraw and issued Appellant notice of its intent to dismiss the petition without conducting an evidentiary hearing. In response, Appellant filed an amended

---

[3] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

petition, *pro se*, on January 8, 2009. The PCRA court dismissed the petition on March 31, 2009, and Appellant did not appeal that order.

Thereafter, on June 18, 2013, Appellant filed a second *pro se* PCRA petition, challenging the legality of his sentence of life imprisonment. **See** Motion for Post Conviction Collateral Relief, 6/18/13, at 3, and appx. 2-5. The PCRA court dismissed that petition on August 19, 2013, and Appellant did not file an appeal.

On July 29, 2019, Appellant filed the present petition, which he titled "Motion to Open and Vacate Order/Sentence Pursuant to 42 Pa.C.S. § 5505."[4] Appellant asserted the assistant district attorney who prosecuted him (ADA Lisa Pellegrini) "withheld and concealed evidence" demonstrating that two Commonwealth witnesses testified falsely. **See** Motion to Open and Vacate Order/Sentence Pursuant to 42 Pa.C.S. § 5505 (PCRA Petition), 7/29/19, at 2. He argued the PCRA court had jurisdiction to "open or vacate" his sentence after 30 days because of fraud. **See id.** at 1, *citing* **Commonwealth v. Walters**, 814 A.2d 253, 256 (Pa. Super. 2002) ("It is also well-established that where a showing of fraud or another circumstance so grave or compelling as to constitute extraordinary causes justifying intervention by the court, then

_____

[4] Section 5505 provides: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505.

a court may open or vacate its order after the 30-day period has expired.") (citation and punctuation omitted).

The PCRA court construed the filing to be a serial, untimely PCRA petition.[5] **See** 42 Pa.C.S. § 9542 ("[The PCRA] shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis."); ***Commonwealth v. Wyatt***, 115 A.3d 876, 879 (Pa. Super. 2015) ("[I]f the PCRA offers a remedy for an appellant's claim, it is the sole avenue of relief and the PCRA time limitations apply."). Accordingly, on September 19, 2019, and October 2, 2019, the PCRA court provided notice of its intent to dismiss the petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907.[6]

Appellant filed a response to the court's Rule 907 notice, in which he argued his claim satisfied the governmental interference exception to the PCRA's timing requirements. **See** Response to Notice to Dismiss 5505 Motion, 12/18/19, at 2-3, *citing* 42 Pa.C.S. § 9545(b)(1)(i). However, that same day,

---

[5] Appellant does not dispute this finding.

[6] The record is unclear why the PCRA court issued two Rule 907 notices.

J-A06042-21

the PCRA court filed an order dismissing Appellant's petition as untimely filed.[7]

This appeal follows.[8]

Appellant's *pro se* brief lists five issues for our review:

1. Whether the [PCRA] Court erred in denying [A]ppellant[']s P.C.R.A. 5505 Petition as untimely filed?

---

[7] The PCRA court's dismissal order is dated one day earlier, December 17, 2019. Thus, it appears Appellant's response to the Rule 907 notice was filed the day **after** the court dismissed his petition. Nevertheless, Appellant's response is dated October 14, 2019, and the PCRA court indicated in its dismissal order that Appellant had filed a response to its Rule 907 Notice. **See** Order, 12/18/19.

[8] Appellant's notice of appeal was docketed on January 23, 2020. Because the PCRA court dismissed Appellant's petition on December 18, 2019, his notice of appeal appears to be untimely. **See** Pa.R.A.P. 903 (notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken"). Nevertheless, we note that Appellant is incarcerated, and proceeding *pro se*. "Pursuant to the prisoner mailbox rule, we deem a document filed on the day it is placed in the hands of prison authorities for mailing." **Commonwealth v. Patterson**, 931 A.2d 710, 714 (Pa. Super. 2007). In **Patterson**, this Court declined to quash an appeal as untimely despite the fact the record was "bereft" of evidence "definitely noting the date of mailing." **Id.** We find the same is true here. Appellant's notice of appeal was due Friday, January 17, 2020. Although it was not docketed until Thursday, January 23rd, it is dated January 16th and Monday, January 20th was a legal holiday. Thus, we conclude "it is likely that Appellant's mailed his notice of appeal on or before" the due date, and we decline to quash the appeal as untimely. **See id.**

Similarly, Appellant's court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal was docketed one day late. The court entered the Rule 1925 order on February 3, 2020, and directed Appellant to file a statement within 21 days. Appellant's Rule 1925(b) statement was docketed on February 25, 2020. Nevertheless, pursuant to the prisoner mailbox rule, we conclude it must have been placed in the mail prior to the February 24th due date. Thus, we consider it to have been timely filed.

2. Whether the Commonwealth's prosecuting attorney impeded justice and committed fraud upon the Court?

3. Whether the prosecuting attorney violated Appellant[']s due process rights and violated disclosure requirements under **Brady**[ v. **Maryland**, 373 U.S. 83 (1963)]?

4. Whether the newly discovered facts had merit under 42 Pa.C.S. §] 9545 and 42 [Pa.C.S. §] 5505?

5. Whether the [PCRA] Court erred when it dismissed [A]ppellant[']s Petition without an evidentiary hearing?

Appellant's Brief at 3.

Our standard of review of an order denying PCRA relief is well-established. "[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" **Commonwealth v. Mitchell**, 141 A.3d 1277, 1283–84 (Pa. 2016) (citations omitted). Furthermore, "[t]he PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Cruz**, 223 A.3d 274, 277 (Pa. Super. 2019) (citation omitted). Furthermore, "a PCRA petitioner is not automatically entitled to an evidentiary hearing." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014). Rather, the PCRA court may "decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." **Id.** (citation omitted).

Appellant's first four claims on appeal challenge the PCRA court's determination that his petition was untimely filed. The statutory requirement that a PCRA petition be filed within one year of the date the judgment of sentence becomes final is a "jurisdictional deadline" and a PCRA court may

not ignore the untimeliness of a petition to address the merits of the issues raised therein. ***Commonwealth v. Whiteman***, 204 A.3d 448, 450 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1028 (Pa. 2019). ***See also*** 42 Pa.C.S. § 9545(b)(1).

Here, Appellant's judgment of sentence was final on March 13, 2008 — 90 days after the Pennsylvania Supreme Court denied allocatur review of Appellant's direct appeal, and Appellant declined to petition the United States Supreme Court for a writ of *certiorari*. ***See*** 42 Pa.C.S. § 9545(b)(3) (for purpose of PCRA timeliness provisions, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review"); U.S. Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Accordingly, his current petition, filed more than 11 years later, is facially untimely. ***See*** 42 Pa.C.S. § 9545(b)(1).

Nevertheless, an untimely petition may be considered if one of the three timeliness exceptions applies. 42 Pa.C.S. § 9545(b)(1)(i)-(iii). A petition invoking one of the exceptions must be filed "within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). In the present matter, Appellant invokes both the "governmental interference" and the "newly-discovered facts" exceptions set forth in Section 9545(b)(1)(i) and (ii).

Pursuant to the governmental interference exception, a petitioner may overcome the untimeliness of his petition is he pleads and proves "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." 42 Pa.C.S. § 9545(b)(1)(i). A petitioner may invoke the "newly discovered facts" exception if he pleads and proves "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). Upon our review, we conclude Appellant has failed to prove the applicability of either time-for-filing exception.

With regard to the "governmental interference" exception, Appellant contends ADA Pellegrini "failed to provide Appellant with impeachment information of an agreement between the Commonwealth and two government witnesses." Appellant's Brief at 5. While the Commonwealth did turn over the federal plea agreements provided to Thomas Harris and John Lee, Appellant maintains ADA Pellegrini withheld the "**full agreement** made with witnesses in exchange for testimony." *Id.* at 7 (emphasis added). Indeed, he asserts that, on July 7, 2019, he learned that Harris and Lee were "resentenced" for their federal crimes "after their trial testimony against Appellant" — resulting in a reduction from 168 to 42 months' imprisonment for Harris and from 360 to 72 months' imprisonment for Lee. *Id.* at 5. Compounding this lack of disclosure, Appellant emphasizes that ADA Pellegrini

- 9 -

"stated on the record during Appellant[']s trial that the witnesses could not be eligible for time reductions because of a year time limit after sentencing." ***Id.*** at 8.

"It is well-settled a ***Brady*** violation may fall within the governmental interference exception." ***Commonwealth v. Natividad***, 200 A.3d 11, 28 (Pa. 2019). A ***Brady*** violation features three components:

> "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

***Id.*** at 25-26.

Here, the PCRA court found the Commonwealth did not withhold any information regarding Harris' and Lee's federal plea agreements. The court explained:

> The Commonwealth advised [Appellant] that the only agreement reached between the Commonwealth and counsel for Harris and Lee, was that the Commonwealth would advise the US Attorney and the Judge handling their cases of the extent of their cooperation and whether or not their cooperation was useful in obtaining convictions with respect to the homicide prosecutions. This information was given to [Appellant] prior to his conviction of the criminal homicide charges in September of 2004.

PCRA Ct. Op., 9/15/20, at 4. Moreover, with regard to the resentencing hearings conducted after Appellant's trial and conviction, the PCRA court aptly noted:

> [ADA Pellegrini] was not a party to the resentencing hearing nor did she participate in any discussions or arguments relative to the requests for resentencing. Her only involvement was what she had previously told [Appellant], and that was that she would advise the Federal officials of the extent and effect of the

cooperation of Harris and Lee in [Appellant's] prosecution, which she did by letter. The decision to reduce their sentences was not hers but, rather, done by [the federal judge] after he had heard and reviewed all of the evidence presented at that hearing by Harris' and Lee's attorneys and the U.S. Attorney assigned to their cases. [ADA Pellegrini] did not participate in that hearing, make the decision to grant their requests for reductions or even suggest what the reductions should be.

*Id.* at 5.

The record supports the PCRA court's findings. During a June 16, 2003, pretrial hearing, counsel for Appellant informed the court that Harris' federal plea agreement was handed to him that day. *See* N.T., 6/16/03, at 5. Further, ADA Pellegrini stated:

With regard to the consideration he is getting in return for his cooperation, it's what I have told [defense counsel] in the past. The same goes for Mr. Lee and [another witness].

I am to inform the Assistant United States Attorney . . . that he testified, he cooperated, and that is it. They will then bring that to the Court's attention. Other than that, he has received no consideration.

*Id.* at 6-7. Thus, Appellant was aware **before trial** that ADA Pellegrini intended to provide information regarding the extent of the witnesses' cooperation to the federal prosecutor after Appellant's trial.

Moreover, while both Harris' and Lee's plea agreements indicated the United States Attorney would "review" the cooperation of the witness "within one year of the imposition of sentence," both agreements also provided the United States Attorney the discretion to file a motion to reduce the witnesses' sentences in the event they provided "substantial assistance in the

investigation or prosecution" of another person.[9]  *See* PCRA Petition, Appendix A, Plea Agreement for John Lee, 1/6/03, at Part 4; Plea Agreement for Thomas Harris, 2/14/03, at Part 9.  Both agreements further stated that any decision to reduce the witnesses' sentences would be "solely" in the discretion of the federal district court.  *Id.*  Thus, any suggestion that a possible sentencing reduction in exchange for Harris' and Lee's testimony was withheld by the Commonwealth is belied by the record.

Alternatively, Appellant argues, for the first time on appeal, that these "secret agreement[s]" constitute newly discovered evidence pursuant to Section 9545(b)(1)(ii).  Appellant's Brief at 12.  He asserts the agreements were not available to him prior to or during trial, and he "had no reasonable means to obtain the . . . agreements and benefits because ADA . . . Pellegrini and both witnesses stated on the record that no such deal existed."  *Id.*

Preliminarily, we conclude this claim is waived because Appellant failed to raise it in his PCRA petition, or in response to the PCRA court's Rule 907 notice.  *See* 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of date judgement of sentence is final "unless the **petition alleges** and the petitioner proves" one of timing exceptions) (emphasis added); Pa.R.A.P.

_____

[9] *See* Fed.R.Crim.P. 35(b)(2)(B) ("Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved . . . information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing").

302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Nevertheless, we also conclude that the newly discovered facts exception provides Appellant with no relief.

Appellant has failed to demonstrate "the facts upon which the claim is predicated were unknown to [him] and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). Harris' and Lee's federal plea agreements — which were provided to Appellant — left open the possibility of a sentencing reduction if either provided "substantial assistance in the investigation or prosecution" of another person. *See* PCRA Petition, Appendix A, Plea Agreement for John Lee, 1/16/02, at 4; Plea Agreement for Thomas Harris, 2/14/03, at 3. Furthermore, at Appellant's trial, both Harris and Lee acknowledged that they **expected** ADA Pellegrini to inform the U.S. Attorney of their cooperation and testimony. *See* N.T., 9/16/04-9/21/04, at 265 (Harris agreeing it was his "understanding that [ADA Pellegrini was] to notify [the] United States Attorney . . . of [his] cooperation with [her] office, and the City of Pittsburgh Police, and [his trial] testimony"); 300 (Lee testifying that he "expect[s] a motion to be filed, a downward departure motion, . . . which would ultimately be the [federal] Judge's decision whether he feels anything should happen"). Harris and Lee were both resentenced less than a year later, in May of 2005. *See* PCRA Ct. Op. at 4. Thus, while the "fact" that both witnesses received a sentence reduction was unknown to Appellant, he was on notice that both witnesses expected ADA Pellegrini to inform the U.S. Attorney of their cooperation, and that a sentencing reduction

was a possibility. Appellant failed to demonstrate he took any action to follow-up on this prior to 2019. Thus, even if he had pled the newly discovered facts exception, Appellant would be entitled to no relief.

To the extent Appellant contends Section 5505 provides an avenue for relief, we disagree. Appellant's claim falls under the PCRA. Thus, he is required to prove the applicability of one of the time for filing exceptions in order to obtain relief pursuant to a facially untimely petition. *See Wyatt*, 115 A.3d at 879.

Appellant's last issue challenges the PCRA court's decision to deny him relief without first conducting an evidentiary hearing. It is well-established that "the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings." *Commonwealth v. Shaw*, 217 A.3d 265, 269 (Pa. Super. 2019) (citation omitted). "We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion." *Miller*, 102 A.3d at 992.

As noted *supra*, Appellant's petition is patently untimely, and he failed to demonstrate the applicability of any of the time-for-filing exceptions. Thus, we agree there is no genuine issue of material fact and no purpose would be served by further proceedings. *See Shaw*, 217 A.3d at 269. Accordingly, we detect no abuse of discretion on the part of the PCRA court in dismissing Appellant's petition without first conducting an evidentiary hearing. *See Miller*, 102 A.3d at 992.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/7/2021