J-S36041-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON SHEALEY | : | |
| | : | |
| Appellant | : | No. 125 WDA 2020 |

Appeal from the PCRA Order Entered December 17, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0002177-2012

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED AUGUST 25, 2020

Devon Shealey (Shealey) appeals the order denying his petition filed

pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,

in the Court of Common Pleas of Beaver County (PCRA court).  After our

thorough review, we affirm, although on a different basis.

I.

A.

We take the following factual background and procedural history from

the PCRA court's December 31, 2014 and December 17, 2019 opinions and

our independent review of the record.  The charges against Shealey arose

from the June 30, 2008 home invasion and shooting deaths of Richard and

_____

[*] Retired Senior Judge assigned to the Superior Court.

Demetria Harper in the presence of their two minor daughters at the victims'

residence, perpetrated by Shealey and his co-defendant. During the

preliminary hearing, the Commonwealth elicited testimony from Cheryl

Chambers and Isaiah Paillet who stated that they spoke with Shealey on the

telephone about his involvement in this crime while he was incarcerated for

other crimes. At the time of arraignment, the Commonwealth filed notice of

its intent to seek the death penalty based on six separate aggravating factors,

and Shealey's appointed counsel, Kevin Kindred, filed his Rule 801 Continuing

Legal Education Qualification for Defense Counsel in Capital Cases (Rule 801

Certification). On May 23, 2014, Shealey filed a motion in limine seeking the

exclusion at trial of any evidence or testimony of his incarceration for other

crimes. (See Shealey's Motion to Prohibit Introduction of Evidence of

Defendant's Incarceration for Other Crimes, 5/23/14, at 3) (pagination

provided).

> The court denied [Appellant]'s motion on the basis of the "complete story" exception to the general proscription against evidence of other crimes where such evidence is part of the chain or sequence of events which become part of the history of the case and form part of the natural development of the facts. However, the court also prohibited the Commonwealth from eliciting any testimony regarding the crimes for which [Appellant] was incarcerated during his discussions with Paillett and Chambers. The conversations of [Appellant] with Paillett and Chambers must be viewed in the context of the relationship that he had with each individual.

(Trial Court Opinion, 12/31/14, at 39); (see also Trial Court Order, 6/03/14,

at 1).

B.

Trial commenced on June 15, 2014. Both the Commonwealth and a defense witness mentioned Shealey's previous incarceration as part of their recitation of events. The trial court gave the jury a limiting instruction on the use of such testimony. On June 26, 2014, at the conclusion of the nine-day trial, the jury convicted Shealey of the aforementioned charges. On July 17, 2014, the trial court sentenced him to two consecutive sentences of life in prison on the Second Degree Murder charges, plus an aggregate consecutive term of imprisonment of not less than 17 nor more than 34 years on the remaining charges. Shealey filed a timely post-sentence motion challenging the sufficiency and weight of the evidence, as well as the trial court's admission of testimony of his prior incarceration, and the fact that, because his second chair counsel was not death penalty certified, the trial court prohibited him from examining witnesses.

On December 31, 2014, the court denied the motion, explaining, in pertinent part:

> The conversations of [Shealey] with Paillett and Chambers must be viewed in the context of the relationship that he had with each individual. The defendant had known Paillett for several years, both having lived in the same neighborhood on the North Side of Pittsburgh. Paillet indicated that his association with [Shealey] was "like a father and son relationship", having taught him "in the ways of the streets". [Shealey] was introduced by Paillett to co-defendant Burgess in 2007 or 2008. ... The first conversation between Paillett and [Shealey] regarding the murders occurred while they were cellmates in the Allegheny County Jail in late 2008 or early 2009 [and Shealey] revealed the details of the Harper killings. ... In April 2010, Paillett, [Shealey] and co-defendant

Burgess were all inmates at the Northeast Ohio Correctional Center in Youngstown, Ohio, where [Shealey] and co-defendant Burgess were cellmates and Paillett was housed on the same unit a few cells away.

[Shealey's] association with Chambers began around Easter in 2008, when Chambers' daughter, Rachel, and [Shealey] began dating. . . . Chambers and her two daughters, Rachel and Rochelle Harden resided in the same apartment building[.] . . . [Shealey] and [the] co-defendant were at the residence nearly every day[.] . . .

On cross examination, Chambers was asked whether [Shealey] continued to be a frequent visitor at her daughter's home . . . to which she replied that he was not. The Commonwealth, on redirect, inquired of Chambers as to the reason that [Shealey] was no longer at her residence nearly every day to which she replied that he was incarcerated. No objection was raised by [counsel].

\* \* \*

Prior to Chambers and Paillett testifying, Rachel Harden testified, on both direct and cross-examination, that [Shealey] was in jail. In response to a question by the assistant district attorney asking if she was having telephone contact with [Shealey] she responded that she was, and that he was in jail. When asked on cross-examination whether she spoke to [Shealey] prior to [a] meeting with police, she responded that she did not, and that he was in jail. In neither instance did defense counsel object or request a cautionary instruction. . . .

To assure that the jury would not improperly view the evidence of [Shealey's] incarceration, the court, in its closing instructions to the jury, cautioned that the testimony regarding the defendant's incarceration was introduced for the limited purpose tending to show [Shealey's] location in relation to the testimony of the witnesses and was not to be considered as showing [he] was a person of bad character or criminal tendencies from which they should infer guilt.

\* \* \*

Based upon the manner in which the evidence of [Appellant]'s incarceration was presented, the circumstances under which the witnesses explained their contact with [Appellant] while he was incarcerated so as to complete the natural development of the case, and the court's cautionary instruction to the jury, no error occurred in the admission of this evidence.

\* \* \*

[As to the court's preclusion of second chair counsel from examining witnesses, the court notes that [the Comment to [Rule 801] ... indicates that 'The educational and experience requirements of the rule may not be waived by the trial or appellate court.' The Comment further addresses a role of "second chair" attorneys: 'An attorney may serve as 'second chair' in a capital case without meeting the educational or experience requirements of this rule. 'Second chair' attorneys may not have primary responsibility for the presentation of significant evidence or argument, but may present minor perfunctory evidence or argument, if deemed appropriate in the discretion of the court.'

(Trial Ct. Op., 12/31/14, at 41-43, 46-47, 52-53). Shealey timely appealed.

C.

In his direct appeal, Shealey raised 11 issues, including, in pertinent part, that the trial court erred by admitting testimony of his prior incarceration and in prohibiting his second chair attorney from participating in examination of witnesses because he was not qualified under Rule 801. (See Commonwealth v. Shealey, 2016 WL 2989573, unpublished memorandum, at **2-3 (Pa. Super. filed May 24, 2016)). Relying on the above reasoning of the trial court, we rejected Shealey's arguments and affirmed the judgment of sentence on May 24, 2016. (See id.). The Pennsylvania Supreme Court denied Shealey's petition for allowance of appeal on December 28, 2016, and

the United States Supreme Court denied his petition for writ of certiorari on October 2, 2017.  (See Commonwealth v. Shealey, 164 A.3d 482 (Pa. 2016), cert. denied, 138 S.Ct. 119 (2017)).

D.

Shealey filed his first PCRA petition pro se on April 23, 2018, and appointed counsel filed an amended PCRA petition on March 8, 2019.  Shealey claimed the ineffective assistance of counsel on three bases:  (1) counsel failed to object or request a cautionary instruction when Rachel Harden testified that he was incarcerated for an unrelated offense; (2) counsel failed to object to his life sentence without the possibility of parole; and (3) second chair counsel was not certified to represent a defendant in a capital case.

After an evidentiary hearing at which Shealey's trial counsel testified, the PCRA court dismissed the amended petition as untimely on December 17, 2019, finding that his judgment of sentence became final on March 28, 2017, after the expiration of the time for filing a petition for writ of certiorari in the United States Supreme Court expired, thus requiring him to file his PCRA petition by March 28, 2018, which he failed to do.  The court did not address

the substantive claims. Shealey timely appealed.[1] Both he and the PCRA court complied with Rule 1925. See Pa.R.A.P. 1925.[2]

## I I .

On appeal, Shealey raises three issues for our review: (1) whether the PCRA court erred in dismissing his petition as untimely; (2) whether trial counsel provided ineffective assistance where he failed to object or request a cautionary instruction when Commonwealth witnesses testified to his incarceration for another offense; and (3) whether he was denied effective assistance of counsel where his second chair counsel was not certified to represent a defendant in a capital case. (See Shealey's Brief, at 3).[3]

## A.

We first address Shealey's argument that the PCRA court erred in dismissing his petition as untimely without giving him the opportunity to address the timeliness issue. He maintains that the PCRA court erred because it appointed counsel, conducted an evidentiary hearing and then ordered the parties to file briefs addressing the petition's merits without advising him at

_____

[1] Our standard of review of the denial of a PCRA petition is whether the record supports the court's findings of fact and is free of legal error. See Commonwealth v. Chambers, 852 A.2d 1197, 1198 (Pa. Super. 2004), appeal denied, 871 A.2d 188 (Pa. 2005).

[2] The Commonwealth failed to file a brief in this matter. See Pa.R.A.P. 2112, 2185.

[3] Shealey abandoned his sentencing issue on appeal.

any time that it believed the petition to be untimely. (See Shealey's Brief, at 6-7). He posits that if the PCRA court determined that his petition was untimely, it should have indicated as such and allowed him the opportunity to address the issue. (See id.). For these reasons, Shealey requests that we remand this matter for him to address the timeliness issue in the PCRA court. (See id.).

"A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment of sentence becomes final. See 42 Pa.C.S. § 9545(b)(1)." Commonwealth v. Mitchell, 141 A.3d 1277, 1284 (Pa. 2016). "For purposes of the PCRA, 'a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.' 42 Pa.C.S. § 9545(b)(3)." Id.

In this case, our Supreme Court denied Shealey's petition for allowance of appeal on December 28, 2016. The PCRA court dismissed Shealey's PCRA petition as untimely because it was filed on April 23, 2018, not within one year after the March 28, 2017 deadline for filing a petition for writ of certiorari with the United States Supreme Court. (See PCRA Court Opinion, 12/17/19, at 7-8). In its opinion, the PCRA court expressly stated that Shealey did not seek review in the United States Supreme Court, and Shealey's brief does not reflect any specific appellate action other than mentioning that he exhausted his direct appeal rights. (See Shealey's Brief, at 4).

However, our independent review discloses that Shealey filed a timely petition for writ of certiorari in the United States Supreme Court on March 22, 2017, which the High Court denied on October 2, 2017. (See Shealey, 138 S.Ct. at 119); (see also Docket No. 16-9372, Supreme Court of the United States, at 1); Sup.Ct.R. 13. Shealey's judgment of sentence became final on October 2, 2017, and the deadline for filing a timely PCRA petition was October 2, 2018. See 42 Pa.C.S. § 9545(b)(1), (3); Mitchell, supra at 1284. Consequently, Shealey's April 23, 2018 PCRA petition was timely filed and we are constrained to conclude that the court's dismissal of it on timeliness grounds was in error.

However, this does not end our inquiry because, although the PCRA court did not address the merits of Shealey's ineffective assistance of counsel claims, the record has been developed sufficiently to enable us to consider the merits of Shealey's claims and we will do so without remanding. See Commonwealth v. Pursell, 724 A.2d 293, 303-04 (Pa. 1999), cert. denied, 528 U.S. 1999).

B.

Shealey's substantive claims allege the ineffective assistance of counsel. In considering an ineffective assistance of counsel claim, we observe first that counsel is presumed effective and that a petitioner bears the burden to prove otherwise. See Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. Super. 2014). To establish an ineffectiveness claim, a defendant must prove:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

Id. (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim. When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." Id. (citations and internal quotation marks omitted). Finally, counsel will not be found ineffective for failing to raise a meritless claim. See id.

1.

Shealey first asserts that trial counsel was ineffective for failing to object or request a cautionary instruction when Commonwealth witnesses[4] referenced his incarceration for crimes unrelated to this case. (See Shealey's

_____

[4] Shealey fails to identify who, other than Rachel Harden, these witnesses were or to provide citation to the pertinent notes of testimony to enable our review. It is not the role of this Court to make arguments on Shealey's behalf nor to scour the nine full days of testimony to support his claim. Therefore, we deem his issue waived as to anyone but Rachel Harden. See Commonwealth v. Leap, 222 A.3d 386, 391 n.5 (Pa. Super. 2019) ("[T]his Court will not develop an argument for an appellant, nor scour the record to support an argument, and instead will find the underdeveloped argument to be waived.") (citation omitted); see also Pa.R.A.P. 2101; Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears."). Moreover, to the extent we can review his issue, it does not merit relief.

Brief, at 7-9). He observes that defense counsel testified at the PCRA hearing that he did not catch Rachel Harding making statements about Shealey's prior incarceration, and that he erred if he failed to object because excluding statements about Shealey's prior incarceration was part of his defense strategy. (See id. at 8) (citing N.T. PCRA Hearing, 7/01/19, at 19, 21-22). Based on this, Shealey argues that his claim has arguable merit that trial counsel did not have a reasonable basis for not objecting to the testimony or requesting a curative instruction, and he suffered prejudice. (See id. at 9). Shealey is due no relief on this issue.

Pursuant to Pennsylvania Rule of Evidence 103, once the trial court definitely rules on an issue raised in a defendant's motion in limine, defense counsel is not required to renew the objection to preserve it. See Pa.R.E. 103(b); see also Commonwealth v. Manivannan, 186 A.3d 472, 479 (Pa. Super. 2018) (defendant was not required to renew objection to evidence's admission where pretrial objection was overruled). Shealey's counsel then cannot be found ineffective for not objecting to testimony already ruled admissible pre-trial to establish the "complete story" of this case.[5] See Fears, supra at 804 (counsel will not be found ineffective for failing to raise a meritless claim).

---

[5] As observed previously, we concluded on direct appeal that the trial court did not abuse its discretion in denying Shealey's motion in limine to preclude this testimony.

Additionally, Shealey's argument that he was prejudiced because "it is reasonably probable that cautioning the jury as to the testimony in question would have effected a different result" fails because the trial court did provide a cautionary instruction despite counsel not requesting it. (See N.T. Trial, 6/25/14, at 13-14); (Trial Ct. Op., 12/31/14, at 46-47). Therefore, because Shealey has failed to plead and prove all three prongs of the ineffectiveness test, his first ineffectiveness claim fails.[6]

### 2.

In his second claim, Shealey argues that he was denied the effective assistance of counsel because the Public Defender's Office only had one death penalty qualified attorney in its office and it failed to provide him with death penalty certified counsel at all stages of his case. (See Shealey's Brief, at 9-11). He maintains that first chair counsel, Attorney Kindred, was the only attorney in the Public Defender's Office who met the Rule 801 death penalty certification requirements, and that in spite of second chair counsel's greater experience, the trial court precluded him from examining witnesses on either direct or cross-examination due to his lack of certification, thus depriving him of effective assistance. In sum, he posits that "[t]he failure of the Public Defender's Office to be able to provide another qualified attorney, or

_____

[6] We also note that Shealey presented the testimony of Lamon Street that the two men previously were incarcerated together. (See N.T. Trial, 6/24/14, at 29-54).

alternatively petition the Court to assign qualified Counsel amounts to ineffectiveness." (Id. at 10). In addition, he notes that because he did not have a death penalty certified attorney at the preliminary hearing stage of the litigation, he was denied qualified death penalty counsel at all stages of his litigation in violation of Rule 801.

As a preliminary matter, we note that it is well-settled that an indigent defendant is entitled to the appointment of counsel but not to free counsel of his choice, and although the right to competent counsel is absolute, there is no absolute right to particular counsel. See Commonwealth v. Tyler, 360 A.2d 617, 619 (Pa.1976) (citations omitted).

> Pennsylvania Rule of Criminal Procedure 801 provides:
>
> In all cases in which the attorney for the Commonwealth has filed a Notice of Aggravating Circumstances pursuant to Rule 802, before an attorney may participate in any stage of the case either as retained or appointed counsel, the attorney must meet the educational and experiential criteria set forth in this rule.

Pa.R.Crim.P. 801. The Comment Rule 801 states, in pertinent part:

> An attorney may serve as "second chair" in a capital case without meeting the educational or experience requirements of this rule. "Second chair" attorneys may not have primary responsibility for the presentation of significant evidence or argument, but may present minor or perfunctory evidence or argument, if deemed appropriate in the discretion of the court. Service as a "second chair" in a homicide case will count as a trial for purposes of evaluating that attorney's experience under paragraph (1)(c) of this rule.

Pa.R.Crim.P. 801, Comment.

In this case, at Shealey's arraignment, the Commonwealth provided Notice of Aggravated Circumstances and appointed counsel, Attorney Kindred, presented proof the same day that he was qualified to defend a defendant in a death penalty case pursuant to Rule 801. (See Notice of Aggravating Circumstances, 11/30/12; Rule 801 Certification, 11/30/12). Because his second chair counsel did not meet the educational requirements for certification pursuant to Rule 801, the trial court precluded him from examining witnesses on direct or cross-examination. This was consistent with the requirements that counsel in a capital case "meet the educational and experiential criteria" of Rule 801, and that an indigent defendant be provided his right to effective counsel. See Pa.R.Crim.P. 801, Comment; Tyler, supra at 619.

Although Shealey posits he was denied effective assistance because the Public Defender's Office did not have multiple death penalty certified attorneys and Attorney Kindred "was fatigued from overwork," he does not provide any evidence that he was prejudiced by this or that Attorney Kindred was ineffective at trial. In fact, his representation resulted in Shealey's conviction for the lesser crimes of Murder of the Second Degree.

Further, his claim that he received ineffective assistance of counsel because he did not have death penalty certified counsel at his preliminary hearing lacks merit. Although Rule 801 provides that a defendant shall have death penalty certified counsel at all stages of the litigation, the record reflects

that Attorney Kindred entered his appearance on November 21, 2012, and filed his Rule 801 Certification on November 30, 2012, the same date that the Commonwealth provided Notice of Aggravating Circumstances to support the death penalty. From the moment that Shealey's case became a capital one, he was represented by death penalty certified counsel in compliance with Rule 801. Moreover, even if he were entitled to death penalty certified counsel at his preliminary hearing before this became a capital case, this fact alone does not establish ineffectiveness because a defendant is still required to establish the three prongs of the ineffectiveness test, which he has failed to do. See Commonwealth v. Staton, 120 A.3d 277, 287 (Pa. 2015), cert. denied, 136 S.Ct. 807 (2016).

For all these reasons, Shealey has failed to plead and prove the ineffective assistance of counsel based on his alleged lack of effective qualified death penalty counsel at all stages of his litigation.

Accordingly, based on the foregoing, we affirm the order denying Shealey's PCRA petition, albeit on different bases. See Commonwealth v. Doty, 48 A.3d 451, 456 (Pa. Super. 2012) (affirming PCRA court's dismissal of petition despite concluding that court erred in finding it lacked jurisdiction over Appellant's PCRA claims "because [the appellate court] not bound by the rationale of the trial court, and may affirm on any basis.") (citation omitted).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/25/2020