J-S46017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
GABRIEL PASTRANA                :
                                :
            Appellant           :    No. 561 EDA 2020

Appeal from the PCRA Order Entered January 14, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000720-2017

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                     **FILED:  JANUARY 29, 2021**

Appellant, Gabriel Pastrana, appeals from the January 14, 2020 order

denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S. §§ 9541-9546.  We affirm.

On direct appeal, a prior panel of this Court summarized the relevant

facts and procedural history of this case as follows:

> Appellant was convicted by jury on February 8, 2018 of two
> criminal offenses and by the court of several summary criminal
> offenses. Appellant was convicted by jury of Count III, 75 Pa.C.S.
> §3802(a)(1), Driving Under the Influence of Alcohol-General
> Impairment, Third Offense; and Count IV, 75 Pa. C.S. §3742.1(a).
> Accident Involving Death or Injury-Not Properly Licensed. Count I
> and II of the Criminal Information were withdrawn by the
> Commonwealth at trial. Appellant was found guilty by the court of
> the following summary offenses: 75 Pa. C.S. §1543(b)(1), Driving
> With A Suspended License Pursuant to §3802/1547(b)(1); 75 Pa.
> C.S. §3323(b), Duties at Stop Sign; 75 Pa. C.S. §3361, Driving at
> Safe Speed; 75 Pa. C.S. §3714(a), Careless Driving; 75 Pa. C.S.
> §3736(a), Reckless Driving.

The facts of this case were testified to during trial. The underlying act involved a two-vehicle accident which occurred late on February 4, 2017[,] into early morning February 5, 2017. That time period coincided with Super Bowl Sunday. N.T., 2/8/18, p. 19. During half-time of the game, Thomas Cunningham drove his wife from their home in Monroe County to St. Luke's Hospital-Anderson Campus in Bethlehem Twp. to retrieve her vehicle. N.T., 2/8/18, p.21. On the return trip[,] Mr. Cunningham was driving by himself along Old Route 115 in the area of Saylorsburg, Monroe County, PA. N.T. 2/8/18, p. 22. Old Route 115 and Hamilton South Road intersect in the vicinity of Saylorsburg with a stop sign facing drivers turning from Hamilton South onto Old Route 115. N.T., 2/8/18, p.70. There is no stop sign on Old Route 115. N.T., 2/8/18, p.70. As Mr. Cunningham approached the intersection he observed a vehicle that did not appear to be slowing for the stop sign on Hamilton South. N.T., 2/8/18, p.22. Fearing the oncoming driver would run the stop sign and strike him, Mr. Cunningham sped up. N.T., 2/8/18, p. 22. Nevertheless, a collision occurred. Mr. Cunningham remained in his vehicle until assistance arrived and was later taken to the hospital with a broken rib and contusions to his knee, ankle, and lower leg. N.T., 2/8/18, p.30-31.

Meanwhile, the occupants of the other vehicle, Appellant and his 18 year-old brother, Elson Pastrana, exited their vehicle. Appellant and Elson Pastrana were returning from a Super Bowl Party at the home of friends of Elson Pastrana's girlfriend's parents. N.T., 2/8/18, p.42. The car they were in was owned by and registered to Appellant. N.T., 2/8/18, p. 156. Appellant estimated that he had consumed approximately six beers during the party and at least one shot of clear liquor. N.T., 2/8/18., p.159. An ambulance operated by EMT Joyce Schuster arrived on the scene prior to the arrival of Pennsylvania State Troopers Justin S. Magluilo and Kevin Kreidler. During the course of the troopers' investigation, Appellant and his brother were separated. N.T., 2/8/18, p.118. By all accounts of the testimony offered at trial, Appellant was severely intoxicated at this point. Trooper Kreidler interviewed Elson Pastrana at the scene. N.T., 2/8/18, p. 118. Elson Pastrana initially stated he was operating the vehicle at the time of the accident, but upon further questioning by Trooper Kreidler, admitted Appellant had actually been operating the vehicle. N.T., 2/8/18, p. 118. Elson Pastrana then also told Trooper Magluilo that he was the passenger and Appellant was the driver. N.T., 2/8/18, p.72. Appellant was requested to perform

field sobriety tests which he refused. N.T., 2/8/18, p. 77. At that point, Appellant was arrested and placed in the back of Trooper Kreidler's car on suspicion of driving under the influence [("DUI")]. Trooper Magluilo then gave Elson Pastrana a ride to his girlfriend's home. N.T. 2/8/18, p.78.

Appellant was sentenced by the court on May 17, 2018. As to Count III, Appellant was sentenced to a minimum of three months' incarceration and maximum of twelve months plus fines and costs. As to Count IV, Appellant was sentenced to a minimum of three months' incarceration and a maximum of six months plus fines and costs. These two sentences were ordered to run consecutively. As to the 75 Pa. C.S. §1543(b) violation, Appellant was sentenced to the statutorily required minimum sixty days' incarceration to run concurrent to the sentences in Count III and IV. Appellant was ordered to pay fines and costs for the remainder of the summary offenses. Appellant filed timely Post-Sentence Motions on May 25, 2018. A hearing was held on Appellant's motions on June 25, 2018, at which time the [c]ourt heard argument from defense counsel and the Commonwealth.

*Commonwealth v. Pastrana*, 219 A.3d 232, 3056 EDA 2018 at *1-3 (Pa. Super. filed June 12, 2019) (unpublished memorandum). On September 13, 2018, the trial court denied Appellant's post-sentence motions. Appellant filed a timely appeal, and on June 12, 2019, this Court affirmed Appellant's judgment of sentence. *Id.* at *22.

Appellant did not file a petition for allowance of appeal in our Supreme Court. Therefore, for purposes of the PCRA, Appellant's judgment of sentence became final on July 12, 2019, thirty days after this Court's disposition of his direct appeal. *See* 42 Pa.C.S. § 9545(b)(3) (explaining that for purposes of the PCRA, a petitioner's judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of United States, or at the expiration of

time for seeking review); *see also* Pa.R.A.P. 1113 ("[A] petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed.").

Appellant filed a timely PCRA petition on October 15, 2019. *See* 42 Pa.C.S. § 9545(b)(1) (stating that in order to be considered timely, a PCRA petition shall be filed within one year of the date that the judgment becomes final). The PCRA court appointed counsel to represent Appellant on October 22, 2019, and on December 19, 2019, the PCRA court held a hearing on Appellant's PCRA petition. On January 14, 2020, the PCRA court denied Appellant's PCRA petition, and Appellant filed a timely appeal on January 29, 2020. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

I. Whether the Lower Court erred by denying Appellant's PCRA Petition despite trial counsel's clear failure to interview, subpoena or call to testify a material witness to the threshold issue of whether Appellant was the driver in his DUI trial.

II. Whether the Lower Court erred by denying Appellant's PCRA Petition despite trial counsel's failure to request a mistrial in [Appellant's] DUI trial immediately following testimony by the affiant State Trooper that [Appellant's] driver's license was DUI-suspended at the time of the alleged offense, in direct violation of the agreement reached pre-trial with the Trial Court that such information would not be disseminated to the jury.

Appellant's Brief at 4.

When reviewing the denial of a PCRA petition, we consider "whether the PCRA court's determination is supported by the record and free from legal

- 4 -

error." ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283-1284 (Pa. 2016) (internal quotation marks and citation omitted). Our standard of review is *de novo* as to the PCRA court's legal conclusions. ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

In both of his issues, Appellant raises claims of ineffective assistance of counsel. It is well settled that counsel is presumed to be effective, and the petitioner bears the burden of proving ineffectiveness. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018) (citation omitted).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quotation omitted). Pursuant to the United States Supreme Court's decision in ***Strickland v. Washington***, 466 U.S. 668 (1984), and the Pennsylvania Supreme Court's decision in ***Commonwealth v. Pierce***, 527 A.2d 973, 975-977 (Pa. 1987), in order to prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove three elements: 1) the underlying claim has arguable merit; 2) counsel had no reasonable basis for his action; and, 3) the petitioner suffered prejudice as a result of counsel's action. ***Brown***, 196 A.3d at 150. "If a petitioner fails to prove any of these prongs, his claim fails." ***Spotz***, 84 at 311 (citation omitted).

Additionally, "[w]ith regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (citation and quotation marks omitted). Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. **Commonwealth v. Dennis**, 950 A.2d 945, 954 (Pa. 2008).

In his first issue, Appellant avers that trial counsel was ineffective in failing to interview, subpoena, or call a material witness concerning whether Appellant or his brother, Elson Pastrana, was driving the car at the time of the accident. Appellant's Brief at 8. After careful review, we conclude that this issue is meritless.

The PCRA court addressed this issue as follows:

> [Appellant] alleges that trial counsel should have called Lisa McCauley as a witness at time of trial. Ms. McCauley is the mother of Elson Pastrana's girlfriend. Elson Pastrana is the brother of the [Appellant], who was also in the vehicle at the time of the incident. Ms. McCauley testified at the PCRA hearing that she remembers [Appellant] and Elson Pastrana leaving the Super Bowl party that they were all attending. She confirmed that [Appellant] had to[o] much to drink, and that Elson Pastrana had nothing to drink. Ms. McCauley testified she recalled that [Appellant] was in the passenger seat and Elson Pastrana was in the driver's seat at the time they all left the party. Ms. McCauley stated she was sure of this because she assisted [Appellant] in securing his seatbelt while he was in the passenger's seat. Ms. McCauley and her family, who were in a separate vehicle, then drove away first. The McCauley's

- 6 -

and [Appellant's] vehicles then went different routes home. Ms. McCauley did not hear anything from trial counsel about this matter, nor did she receive a phone call or subpoena to testify at trial.

Mr. Velander[, Appellant's trial counsel,] testified [at Appellant's PCRA hearing] that he had a discussion with [Appellant] about potential witnesses for trial. He also discussed the same with Elson Pastrana and Elson's counsel, Thomas Sundmaker, Esquire. Mr. Velander recalled Elson Pastrana stating that his girlfriend's mother had seen them getting in the car when leaving the Super Bowl party. Mr. Velander believes he was given a first name of the person and an approximate location where she lived, but no address or other information.

Mr. Velander had a further discussion about the ability to subpoena witnesses if necessary. He recalled that he was told that Elson Pastrana and his girlfriend were no longer together. Mr. Velander opted not to contact Elson Pastrana's girlfriend and the girlfriend's mother because of the fact they were no longer dating. Mr. Velander was concerned that any hostility between Elson Pastrana and the girlfriend over the break-up would potentially hurt [Appellant's] case. Ms. McCauley confirmed that Elson Pastrana and her daughter are still dating at the current time, but that they did break up once or twice for a short period of time. She did not indicate the timing of the break-up(s) in relation to Mr. Velander's inquiries about the matter with [Appellant] and Elson Pastrana. Mr. Velander believed the testimony of Elson Pastrana, that he was the driver, would be strong enough to acquit [Appellant]. Mr. Velander did not want to call a witness who could prove to be a hostile witness. Therefore, Mr. Velander elected not to pursue the witness.

We will deny the [Appellant's claim] for several reasons. First, there was no evidence the witness's absence was so prejudicial that [Appellant] was denied a fair trial. The witness, if called, apparently would have testified to the fact [Appellant] was intoxicated, and that she witnessed him get in the passenger seat as he left the Super Bowl party. However, the witness does not know what happened after she drove away from the residence where the party took place. Ms. McCauley and her family left before [Appellant] and Elson Pastrana left, and went their separate ways. The witness's testimony, while credible, does not provide an alibi as it relates to the exact time of the accident.

Second, trial counsel believed that the testimony of Elson Pastrana, which was self-inculpatory as to the cause of the accident, would establish that he - and not [Appellant] - was driving at the time of the accident. Mr. Velander felt this witness would only have provided some corroboration, and was unnecessary. More importantly, Mr. Velander assessed the witness as possibly being hostile and causing more harm than help. He remembers being told that Elson Pastrana and the girlfriend had broken up at the time of trial preparation. [Appellant] also testified that he discussed with Mr. Velander that his brother and girlfriend were no longer dating and that they then discussed the possibility of a subpoena to secure anyone needed. Mr. Velander determined, as trial strategy, that it was best not to contact the witness or Elson Pastrana's girlfriend because of the break-up. Mr. Velander was concerned the testimony could prove hostile, or of no additional assistance, and that Elson Pastrana's testimony was sufficient to acquit. Mr. Velander, as trial counsel, had a reasonable basis for not calling Ms. McCauley under those circumstances. The request for relief on this basis will also be denied.

PCRA Court Opinion, 1/14/20, at 7-9.

We discern no error of law in the PCRA court's reasoning or rationale. Although the potential witness, Ms. McCauley, testified that Appellant was intoxicated and that she saw Appellant enter the vehicle on the passenger's side on the night of the accident, Ms. McCauley also testified that she departed before Appellant and Appellant's brother Elson Pastrana left the party. Thus, Ms. McCauley could not have provided definitive testimony concerning whether Appellant or Elson Pastrana was driving Appellant's car at the time of the accident. Moreover, Appellant's counsel made a strategic decision not to call Ms. McCauley as a witness because it was his understanding that Elson Pastrana and Ms. McCauley's daughter were no longer in a romantic

relationship, and counsel believed this separation may have led to Ms. McCauley being a hostile defense witness at Appellant's trial.

After review, we agree with the PCRA court, and we conclude that counsel had a reasonable basis for his decision. *Chmiel*, 30 A.3d at 1127. Therefore, Appellant is entitled to no relief on this claim of error.

In his second issue on appeal, Appellant contends that counsel was ineffective in failing to move for a mistrial after Pennsylvania State Trooper Kevin Kreidler testified that Appellant's driver's license was under suspension due to a prior DUI conviction in violation of a pretrial agreement between the Commonwealth and Appellant. Appellant's Brief at 13. We conclude that no relief is due.

The PCRA court disposed of this issue as follows:

> [Appellant's next] issue was trial counsel's failure to object and/or request a mistrial as to the affiant's testimony that driving records showed the [Appellant] was DUI Suspended at the time of this incident. The relevant testimony of the affiant, Trooper Kevin Kreidler, was as follows:
>
> Q. (District Attorney Rogers) Okay. You also took steps to determine -- the car that was involved in the crash which held [Appellant], you took steps to determine who that car was registered to, correct?
>
> A. Yes.
>
> Q. Who was it registered to?
>
> A. It's the vehicle registered to [Appellant].
>
>          * * *

Q. And Trooper, you also took steps to determine the status of [Appellant] relative to his driver's license, whether he had a valid license, correct?

A. Yes.

Q. What did your investigation show in that regard?

A. Running it through the system, it indicated that he was suspended DUI-related at the time of the crash.

Q. Okay. [Appellant] also talked to you?

A. Excuse me?

Q. At some point, did [Appellant] talk to you in addition to things we have talked about?

A. Well, I had conversation with him.

Q. What did he say about who was the driver?

A. He stated that his brother had driven. That he wasn't driving.

[District Attorney Rogers]: Okay.

[Counsel for Appellant]: May we approach, your honor.

Court: Yes.

* * *

(N.T. Feb. 8, 2018, pp. 120-121).

A discussion then ensued about the driving record being admitted as an exhibit at trial. The reason for the exhibit and the line of questioning on the status of [Appellant's] license was for the charge of Accidents Involving Death/Injury - Not Properly Licensed, which the jury had to consider, and for the Driving While License Suspended or Revoked - DUI Related, which the court had to consider. Unfortunately, the trooper inadvertently mentioned in his testimony that [Appellant's] license was DUI suspended, rather than just saying it was suspended.[1]

¹ The purpose of the driving record as an exhibit was to show the court it was a DUI-suspended license without showing or telling the jury that fact. The exhibit was admitted, but not published to the jury.

[Appellant] contends his trial counsel, Mr. Velander, should have raised an objection to the trooper's statement that [Appellant's] license was DUI suspended, and/or requested a mistrial. Trial counsel did ask to approach shortly after the statement in question was made by the trooper. A discussion was held about the exhibit containing [Appellant's] driving record. The district attorney suggested the Court give the jury a cautionary instruction concerning the exhibit and trial counsel agreed. No further discussion occurred regarding the trooper's testimony. Ultimately this Court gave a closing instruction as follows:

I instruct you that you are only to consider whether or not the [Appellant's] license was suspended at the time of the accident. You shall not consider the reasons for that suspension.

(N.T. Feb. 8, 2018, p. 216).

At the hearing on [Appellant's] PCRA petition, Mr. Velander indicated he was conferring with [Appellant] at the time of the trooper's statement that [Appellant's] license was DUI suspended. Mr. Velander stated his client heard the statement and told him about it. At that point, [Mr. Velander] requested to approach at sidebar, after the slight delay as shown in the transcript. Mr. Velander testified that he couldn't really tell if the testimony made an impression on the jury and he didn't want to draw attention to it. He was concerned a curative instruction given at the immediate time would draw attention to it and he did not want it repeated. Mr. Velander stated he considered requesting a mistrial, but felt it was early enough in the case, and that [Appellant's] brother's testimony was so strong, it was best to continue.² He believed the evidence would be enough to acquit. In other words, trial counsel made a tactical decision not to request a mistrial.

² [Appellant's] brother, Elson Pastrana, was an eyewitness and testified he was driving the vehicle at the time of the incident, and not [Appellant].

> Looking at the events as a whole, and trial counsel's reasoning on trial strategy, we can agree the decision to proceed, and not to have an immediate cautionary instruction or request a mistrial, has arguable merit. Trial counsel's actions had an objective reasonable basis. Furthermore, any prejudice to [Appellant] was cured by the cautionary closing instruction by the [trial c]ourt telling the jury to disregard the reason for any suspension, and only consider if [Appellant's] license was suspended. As such, this issue will be denied.

PCRA Court Opinion, 1/14/20, at 3-6 (internal quotation marks omitted).

We agree with the PCRA court's conclusion. Although Trooper Kreidler mentioned that Appellant's driver's license was suspended due to a prior DUI, Appellant's counsel had a reasonable basis for not objecting or moving for a mistrial. Appellant's counsel believed that Appellant's case was strong, and counsel concluded that bringing further attention to the Trooper's testimony would negatively impact the jury. We find that counsel's decision was a reasonable trial strategy under the circumstances; therefore, we cannot conclude that that counsel was ineffective for failing to object or move for a mistrial. *Chmiel*, 30 A.3d at 1127. Appellant is entitled to no relief on this issue.

For the reasons set forth above, we conclude that the PCRA court's ruling on Appellant's PCRA petition was supported by the record and free from legal error. *Mitchell*, 141 A.3d at 1283-1284. Accordingly, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/21