J-A05021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN MARSHALL | : | |
| | : | |
| Appellant | : | No. 843 EDA 2022 |

Appeal from the PCRA Order Entered February 22, 2022,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0007393-2011.

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED APRIL 14, 2023**

Shawn Marshall appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA). 42 Pa.C.S.A. §§ 9541–9546. We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On March 7, 2011, [the twenty-two-year-old victim] was found badly beaten in Fisher Park. The victim was transported to Einstein Hospital, where she was diagnosed with a skull facture and traumatic brain injury. On March 11, 2011, the victim informed the police that she had spent the weekend with [Marshall] and that she and [Marshall] had been romantically involved. She told police that at some point over the weekend, [Marshall] had appeared jealous and angry and asked her to join him on a walk in Fisher Park.
>
> At the park, [Marshall] walked behind the victim and viciously struck her on the back of the head with a hammer multiple times. Thereafter, [Marshall] stole her belongings from

her pocket. [Marshall] dragged the victim into the bush, then drove around the city in the victim's car.

[Marshall] was arrested and after receiving *Miranda* warnings, confessed to bludgeoning and robbing the victim. [Marshall] admitted that he instructed the victim to go with him to Fisher Park at dusk because he wanted to steal her car and money. While they were walking, he told her to walk ahead of him. With a hammer he had hidden, he struck her in the back of the head, fracturing her skull. She fell face first onto the path. Nonetheless, [Marshall] continued to beat and kick her. Eventually, he ceased this brutal attack and stole [the victim's] ATM card, identification, cell phone, and car keys from her pockets. [Marshall] admitted that he then dragged her away from view. [Marshall] used her ATM card to withdraw $420 from her account and changed the phone number on her cellphone so he could use the phone undetected.

The police investigation produced overwhelming evidence linking [Marshall] to the attack. Surveillance video was recovered from a CVS showing [Marshall] at the location where the victim's stolen ATM card was used to withdraw $420. Police found the victim's stolen dark blue 2010 Honda Civic parked behind [Marshall's] house. In [Marshall's] bedroom, police found a boot with the victim's blood, underwear with the victim's DNA, the victim's ATM card, and the victim's cellphone.

On October 25, 2011, [Marshall] pled guilty to attempted murder, robbery, and possession of an instrument of crime[.] On June 18, 2012, this court sentenced [Marshall] to a term of imprisonment of 20 to 40 years, followed by 10 years of probation, [Marshall] chose to allocute at his sentencing hearing and claimed to "have no reason [for] why [he] did it, " but nevertheless apologized for committing the crimes for which he pled guilty.

PCRA Court Opinion, 6/29/22, at 1-3 (excess capitalization and citation omitted).

Following the trial court's denial of his post-sentence motion, Marshall filed an appeal to this Court. On November 8, 2013, we agreed with counsel's assessment that Marshall's appeal was frivolous. ***Commonwealth v.***

- 2 -

*Marshall*, 91 A.2d 1278 (Pa. Super. 2013) (non-precedential decision). We therefore affirmed Marshall's judgment of sentence and permitted counsel to withdraw. *Id.* Marshall did not seek further review.

On September 5, 2018, Marshall filed the *pro se* PCRA petition at issue. Thereafter, the post-conviction proceedings were protracted. The PCRA court appointed counsel, but, on November 30, 2018, that attorney was permitted to withdraw, and new counsel was appointed. New counsel filed an amended PCRA petition on January 8, 2019, but was later permitted to withdraw. Current PCRA counsel was appointed on September 27, 2019, and she filed an amended PCRA petition on July 28, 2020. In this petition, Marshall asserted newly discovered evidence in the form of an affidavit from Raymond Brown who asserted that he was an eyewitness to the incident. Marshall further alleged that trial counsel was ineffective for not investigating Brown, even though Brown "wrote to the Defender's Association numerous times to inform them that he had information that would exonerate" Marshall. Amended PCRA Petition, 7/28/20 at 2 (unnumbered). Lastly, Marshall asserted that his guilty plea was involuntary entered based upon trial counsel's ineffectiveness.

Although a hearing in this case was scheduled for December 11, 2020, it was later continued until March 26, 2021. On June 21, 2021, the Commonwealth filed a motion to dismiss Marshall's petition, in which it argued that Marshall's actual claim involved the ineffectiveness of trial counsel which does not constitute a time-bar exception. The Commonwealth further

asserted that, even if timely, Marshall's claim would fail given the overwhelming evidence of his guilt.

On June 28, 2021, the PCRA court entered an order continuing the matter for ninety days in order to afford Marshall the ability to respond. In his response, Marshall asserted that his "claims are a hybrid of newly-discovered evidence and ineffective assistance of counsel that cannot be extricated. The attorney's ineffectiveness, [was] in fact, also the newly discovered evidence." Response, 9/16/21, at 3 (unnumbered). Marshall also referenced two letters that Brown sent to the Defender Association of Philadelphia. Finally, Marshall challenged the Commonwealth's conclusion that the evidence of his guilt was overwhelming.

The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Marshall's amended PCRA petition without a hearing. However, on December 7, 2021, the court entered an order continuing the matter, and stating that a new Rule 907 notice would be issued. On January 10, 2022, the PCRA court issued its new Rule 907 notice. In this notice, the court explained to Marshall that "[d]espite formulating your claim in terms of the discovery of new facts not previously known, your claim, in essence, is challenging prior counsel's ineffectiveness for failing to investigate Mr. Brown's statement, which was sent to your trial counsel." Rule 907 Notice, 1/10/22, at 2 (unnumbered). The court then cited cases holding that ineffective assistance of counsel do not establish a time-bar exception. *Id.* Lastly, the PCRA court opined that, even if Brown's statement qualified as a newly-discovered fact, Marshall failed

to demonstrate that "this information was previously unascertainable with the exercise of due diligence." *Id.*

Marshall did not file a response. By order entered February 22, 2022, the PCRA court dismissed Marshall's amended petition. This timely appeal followed. Both Marshall and the PCRA court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Marshall raises one question for our review:

I. Did the PCRA Court err by dismissing [Marshall's] PCRA Petition without first holding an evidentiary hearing when [Marshall] raised a claim of newly discovered evidence, in the form of a previously unknown eyewitness, who purports to have been present for the crime in question, that [Marshall] was not the perpetrator of the crime and that he sent several letters to the Defender Association of Philadelphia to notify them that he had information about the incident but was never contacted by [Marshall's] attorney[?]

Marshall's Brief at 2.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.

> To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

The PCRA court dismissed Marshall's petition without a hearing because the petition was untimely, and Marshall did not plead and prove a time-bar exception. We agree.

The timeliness of a PCRA petition is jurisdictional. *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition is met. 42 Pa.C.S.A. § 9545(b)(1).

The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233–34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i)–(iii)). To meet the "newly discovered facts" exception of Section 9545(b)(1)(2), a petitioner must:

> allege and prove that there were facts that were unknown to him and that he could not have ascertained those facts by the exercise of due diligence. The focus of the exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (quotations, brackets, citations, and emphasis deleted). The alleged ineffective assistance of prior counsel is not a "newly discovered fact" under this exception. *Commonwealth v. Mitchell*, 141 A.3d 1277, 1284–85 (Pa. 2016) (following *Commonwealth v. Gamboa–Taylor*, 753 A.2d 780, 785 (Pa. 2000)).

A PCRA petitioner must file his petition "within one year of date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). If a PCRA petition is untimely and the petitioner has not pled and proven an exception, "neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007) (citation omitted).

Here, Marshall's judgment of sentence became final on December 9, 2013, at the expiration of the period for seeking review by the Supreme Court of Pennsylvania. Pa.R.A.P. 1113(a); *see* 1 Pa.C.S.A. § 1908. Therefore, Marshall had until December 9, 2014, to file a timely petition. 42 Pa.C.S.A. § 9545(b)(1). Because Marshall filed his petition in 2018, it is untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. *Brandon*, *supra*.

In his amended petition, Marshall asserted that he could establish the newly-discovered fact exception to the PCRA's time bar based upon Brown's August 14, 2018 "Affidavit" and two letters Brown purportedly sent to the Defender Association. We cite verbatim Brown's affidavit, as follows:

"Affidavit of Raymond Brown LT6439"

On 3-7-11, I saw an incident in Fisher Park in Philadelphia. I Marshall and a female come into the park. Later another male came up to them and hit the female in the head, she felt down. Marshall step in the middle of them. The female had blood coming from somewhere, she push Marshall back and said its okay just go, so he did. This other guy just went crazy on this female hitting her as she was on the ground. I went to my car and came back with my gun. I pointed at the guy and when I notice the female was not there I back away and went my way. I was going down 5th Street and saw Marshall walking.

I later was arrested for an unrelated event and housed in the Philadelphia Prison System for 2011-2014. In April 2011 I talked to a Public Defender and told him I had information about 3-7-11 event at Fisher Park, he told me to write his office May 2011 I wrote his office bearing the same information and my willingness to testify if need be, and that I have the time to do so. March 2012, I wrote another letter indicating the same I never got an interview or response. At all times, and now I was willing and able to testify. I was at SCI-Huntingdon talk to another inmate when Marshall over heard me talking about it. I informed him of my knowledge and attempt to contact the Philadelphia Public Defenders, see Attachments 1 and 2.

Brown also attached the two letters he referred to in his affidavit. In the first, dated May 10, 2011, Brown merely stated that he had information about the March 7, 2011, incident. In the second, dated March 14, 2012, Brown referenced his prior letter and provided a more detailed summary of his proposed testimony.

Relying on Brown's affidavit and the letters, Marshall contends that he is entitled to relief based on "after-discovered evidence." Marshall's Brief at 6–11 (citing **Commonwealth v. Peoples**, 319 A.2d 679 (Pa. 1974), and **Commonwealth v. Pagan**, 950 A.2d 270 (Pa. 2008)). In doing so, Marshall

- 8 -

conflates a substantive basis for relief with a timeliness exception. As this

Court has stated:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.
>
> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations

omitted).

In its Rule 907 Notice, the PCRA court noted that Marshall failed to

demonstrate that he could not have learned of Brown's statement earlier in

the exercise of due diligence. Marshall provides no such argument in his

appellate brief. We could, therefore, affirm the denial of post-conviction relief

on this basis alone.

Nonetheless, even if we assume Marshall met a timeliness exception, the PCRA court concluded, in its Rule 1925(a) opinion, that Marshall's substantive claim of after-discovered evidence did not entitle him to relief in the form of a new trial.

To review the PCRA court's determination, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. **See**, **e.g.**, **Small**, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is

- 10 -

granted." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.***

Applying the ***Small*** test to Marshall's claim, the PCRA court found it to lack merit for several reasons. As the court first explained:

> Mr. Brown's suspect affidavit does not justify a new trial, nor would it lead to "a different outcome." Given that [Marshall] and the victim were "romantically involved" and she had "spent the weekend at his house," which [Marshall] does not dispute, Mr. Brown's depiction of the assault in Fisher Park is simply incredulous.
>
> In the affidavit, Mr. Brown states that he saw "another male come up to them [Marshall and the victim] and hit the female" causing the victim to fall to the ground and start bleeding. [Marshall's] response, according to Mr. Brown, was not to stop this unknown man from hitting his girlfriend, but merely to "step in the middle" and do nothing else. Next, according to Mr. Brown, the victim, who had just been assaulted and was on the ground, bleeding profusely, apparently told [Marshall] "it's okay just go." There is no logical reason for the victim to respond to a random, unprovoked assault that way, nor is there any reason for the victim to tell her romantic partner that the situation was "okay" and he should "just go." [Marshall] did not check to see how badly she was hurt or from where she was bleeding. [Marshall] did not call the police, or call an ambulance, he simply walked away. And the attacker, according to the affidavit, "just went crazy on the female hitting her as she was on the ground." [Marshall] thus did nothing to aid his romantic partner who was viciously and violently assaulted.

PCRA Court Opinion, 6/29/22, at 7-8.

- 11 -

The PCRA court then noted that Brown's affidavit conflicted with the overwhelming evidence of Marshall's guilt, including Marshall's own confession:

> Beyond the absurdity of Mr. Brown's affidavit, the weight of the evidence also overwhelmingly implicates [Marshall], such that even if the [after-]discovered evidence was introduced, it would not change the outcome of the case. First, after being arrested and receiving Miranda warnings, [Marshall] confessed to the crime. In his post-arrest interrogation, [Marshall] admitted that he viciously assaulted and then robbed the victim. [Marshall] also confessed to the police that he armed himself with a hammer and took [the victim] to the park under the pretense of taking her for a walk and then struck her in the head with a hammer. He admitted to striking her in the head again and repeatedly kicking her while she lay on the ground. He told police he stole her car keys and cellphone, the pulled her body into the grass off the trail and left her there. He also told the police that he drove her car to the ATM and took $420 from her bank account. In his allocution, [Marshall] also apologized "for the pain and suffering I caused mentally and physically" and stated that he "can't even give myself a reason why I did it."
>
> Other evidence corroborates [Marshall's] confession. A surveillance video which was recovered from CVS shows [Marshall] at the location where the victim's stolen ATM card was used to withdraw $420. The victim was also found dragged off and hidden from the path by police, a detail [Marshall] could not have known had he left the park when Mr. Brown's affidavit says he did. Police found the victim's stolen dark blue 2010 Honda Civic parked behind [Marshall's] house. Inside [Marshall's] bedroom, police found a boot with the victim's blood, underwear with the victim's DNA, as well as the victim's ATM card and cellphone. The overwhelming weight of the evidence against [Marshall] shows that the affidavit would not affect the outcome of the case.

PCRA Court Opinion, 6/29/22, at 8-9 (excess capitalization and citations omitted).

As a final reason for rejecting Marshall's substantive after-discovered claim, the PCRA court noted that Brown's affidavit conflicted with the two letters Brown purportedly sent to the Defender Association. The court explained:

First, Mr. Brown does not mention the supposed third man in his initial letter to the Public Defender's Office, nor does he provide any information beyond stating that he saw "an assault on March 7, 2011 in Fisher Park." Only in the second letter does he mention what occurred. Even in the second letter. Mr. Brown does not provide any information or detail beyond him seeing "a second man walk up to them" and "[hit] the woman in the head." He does not explain how he knew which man was [Marshall] or how he knew the man hitting the woman was not [Marshall]. Despite noting in his affidavit that he had seen [Marshall] after the assault on 5^(Th) Street, Mr. Brown does not mention this at all in either of his letters. Also, neither the affidavit nor the letters mention use of a hammer in the assault.

Additionally, in his affidavit, Mr. Brown states that "I, Marshall, and [a female] came into the park" implying that all three came in together or around the same time. However, in the second letter he purportedly sent to the Defender Association, he states that "I was in Fisher park and saw a guy and a women [sic] come in." This statement indicates that Mr. Brown was already in the park before [Marshall] and the victim entered.

Further, in his affidavit, Mr. Brown states that he "went to [his] car and came back with [his] gun" and "pointed it at the guy." Mr. Brown does not state how this interaction ended, where the alleged third person went after Mr. Brown pointed a gun at him, [or] what the alleged third person looked like. Mr. Brown also fails to explain how [Marshall] gained possession of the victim's wallet, credit card, car keys, or phone. Finally, the affidavit's description of the events is plainly contradicted by both [Marshall's] confession to police and the other physical evidence.

PCRA Court Opinion, 6/29/22, at 9-10.[1]

Given the above reasons, the PCRA court concluded: "The overwhelming weight of the evidence against [Marshall], the lack of logic and credibility of Mr. Brown's affidavit, and the inconsistencies in Mr. Brown's recollection demonstrate that the affidavit would not affect the outcome of the case[.]" *Id.* at 10.

Our review of the record supports the PCRA court's conclusion. Given the above-cited comments, the PCRA court properly considered the credibility and integrity of Marshall's after-discovered evidence claim and concluded that Marshall was not entitled to a new trial. Contrary to Marshall's claim, an evidentiary hearing is not required before this credibility and integrity assessment is made. *See Small*, *supra*; *Commonwealth v. Johnson*, 966 A.2d 523, 540 (Pa. 2009) (stating that our Supreme Court has made it clear that when the PCRA court declines to hold a hearing on after-discovered evidence, the PCRA court must make specific credibility determinations).

Moreover, while Marshall claims that the PCRA court was "simply making assumptions based on nothing other than conjecture, Marshall's Brief at 9, he does no more than make contrary assumptions, claim that trial counsel was

---

[1] The Commonwealth reads Brown's affidavit as stating that Brown "was with [Marshall] at the scene. Commonwealth's Brief at 9. The Commonwealth correctly concludes that, if this were true, Marshall would have known of Brown's existence prior to entering his guilty plea and he would not be entitled to relief. We agree. *See Brown*, 111 A.3d at 176 (explaining that "the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts").

ineffective for failing to follow up with Brown's letters, and ignores his detailed confession to the crime. *See id*.

Finally, as noted by the PCRA court, Marshall's true claim involves the ineffectiveness of counsel for failing to act on these letters dated several years ago. It is now well-settled that claims of ineffective assistance of defense counsel does not meet a time-bar exception to the PCRA. *See generally Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785 (Pa. 2000).

In sum, the PCRA court correctly concluded that Marshall's PCRA petition was untimely and that he did not establish a time-bar exception. Alternatively, the court correctly considered the integrity and credibility of Marshall's after-discovered evidence and determined it did not warrant relief in the form of a new trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2023

- 15 -